**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | *Leroy John Balzer* |
| | First Name          Middle Name          Last Name |
| Debtor 2 | *Karen Ann Balzer* |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number (if known) | *17-10652 TPA* |

☐ Check if this is an amended filing

## Official Form 106Sum

## Summary of Your Assets and Liabilities and Certain Statistical Information    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.

### Part 1: Summarize Your Assets

| | **Your assets** Value of what you own |
|---|---|
| 1. **Schedule A/B: Property** (Official Form 106A/B) | |
| 1a. Copy line 55, Total real estate, from Schedule A/B.............................................. | $          314,000.00 |
| 1b. Copy line 62, Total personal property, from Schedule A/B........................................ | $          10,745.00 |
| 1c. Copy line 63, Total of all property on Schedule A/B.................................................. | $          324,745.00 |

### Part 2: Summarize Your Liabilities

| | **Your liabilities** Amount you owe |
|---|---|
| 2. *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D) | |
| 2a. Copy the total you listed in Column A, *Amount of claim,* at the bottom of the last page of Part 1 of *Schedule D...* | $          234,701.17 |
| 3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F) | |
| 3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*................................ | $          0.00 |
| 3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*............................ | $          31,235.09 |
| **Your total liabilities** | $          265,936.26 |

### Part 3: Summarize Your Income and Expenses

| | |
|---|---|
| 4. *Schedule I: Your Income* (Official Form 106I) Copy your combined monthly income from line 12 of *Schedule I*............................................................... | $          2,942.00 |
| 5. *Schedule J: Your Expenses* (Official Form 106J) Copy your monthly expenses from line 22c of *Schedule J*........................................................ | $          2,775.22 |

### Part 4: Answer These Questions for Administrative and Statistical Records

6. **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

   ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

   ■ Yes

7. **What kind of debt do you have?**

   ■ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

   ☐ **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. *Check this box* and submit this form to the court with your other schedules.

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

Debtor 1   *Leroy John Balzer*
Debtor 2   *Karen Ann Balzer*

Case number *(if known)* **17-10652 TPA**

8. **From the *Statement of Your Current Monthly Income*:** Copy your total current monthly income from Official Form 122A-1 Line 11; **OR**, Form 122B Line 11; **OR**, Form 122C-1 Line 14.

$ _____ **2,942.00**

9. **Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F*:**

| From Part 4 on *Schedule E/F*, copy the following: | Total claim |
|---|---|
| 9a. Domestic support obligations (Copy line 6a.) | $ _____ 0.00 |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $ _____ 0.00 |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $ _____ 0.00 |
| 9d. Student loans. (Copy line 6f.) | $ _____ 0.00 |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $ _____ 0.00 |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | +$ _____ 0.00 |
| 9g. **Total.** Add lines 9a through 9f. | $ _____ 0.00 |

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

**Fill in this information to identify your case and this filing:**

| Debtor 1 | *Leroy John Balzer* | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | *Karen Ann Balzer* | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:   WESTERN DISTRICT OF PENNSYLVANIA

Case number   **17-10652 TPA**

☐ Check if this is an amended filing

## Official Form 106A/B

# Schedule A/B: Property

**12/15**

In each category, separately list and describe items. List an asset only once.  If an asset fits in more than one category, list the asset in the category where you think it fits best.  Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**  **Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1.  **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes.  Where is the property?

**1.1**

*3623 West Lake Road*

Street address, if available, or other description

*Erie*               *PA*      *16505-0000*

City          State    ZIP Code

*Erie*

County

**What is the property?** Check all that apply

■ Single-family home

☐ Duplex or multi-unit building

☐ Condominium or cooperative

☐ Manufactured or mobile home

☐ Land

☐ Investment property

☐ Timeshare

☐ Other _____

**Who has an interest in the property?** Check one

☐ Debtor 1 only

☐ Debtor 2 only

■ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

*In addition to the Mortgages in favor of PNC Bank, N.A. and Huntington National Bank, a total of $22,571.21 in state and federal tax liens act as liens on this real estate and all other real estate owned by the Debtors.*

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$189,000.00** | **$189,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

*Tenants by the Entireties*

☐ Check if this is community property
(see instructions)

| Debtor 1 | *Leroy John Balzer* | |
|---|---|---|
| Debtor 2 | *Karen Ann Balzer* | |

Case number *(if known)*    **17-10652 TPA**

**If you own or have more than one, list here:**

1.2

*706 Linden Avenue*

Street address, if available, or other description

*Erie*        **PA**    *16505-0000*

City        State    ZIP Code

*Erie*

County

**What is the property?** Check all that apply

- ☑ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative
- ☐ Manufactured or mobile home
- ☐ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other _____

**Who has an interest in the property?** Check one

- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☑ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

*In addition to the Mortgage in favor of DiTech Financial, LLC a total of $22,571.21 in state and federal tax liens act as liens on this real estate and all other real estate owned by the Debtors.*

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| *$85,000.00* | *$85,000.00* |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

*Tenants by the Entireties*

☐ **Check if this is community property**
(see instructions)

---

**If you own or have more than one, list here:**

1.3

*3633 West Lake Road*

Street address, if available, or other description

*Erie*        **PA**    *16505-0000*

City        State    ZIP Code

*Erie*

County

**What is the property?** Check all that apply

- ☐ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative
- ☐ Manufactured or mobile home
- ☑ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other _____

**Who has an interest in the property?** Check one

- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☑ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

*Subject to a blanket mortgage in favor of Huntington National Bank. A total of $22,571.21 in state and federal tax liens act as liens on this real estate and all other real estate owned by the Debtors.  Debtors own the land, however, they do not own the mobile home on the land.*

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| *$40,000.00* | *$40,000.00* |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

*Tenants by the Entirties*

☐ **Check if this is community property**
(see instructions)

---

2.  **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.........................................................................=>**

**$314,000.00**

**Part 2:**  Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

| Debtor 1 | *Leroy John Balzer* | | |
|---|---|---|---|
| Debtor 2 | *Karen Ann Balzer* | Case number *(if known)* | **17-10652 TPA** |

### 3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

☐ No
☑ Yes

| 3.1 | Make: | ***Jeep*** | | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|---|
| | Model: | ***Patriot*** | | ☐ Debtor 1 only | |
| | Year: | ***2007*** | | ☐ Debtor 2 only | |
| | Approximate mileage: | ***49,000*** | | ☑ Debtor 1 and Debtor 2 only | **Current value of the entire property?** / **Current value of the portion you own?** |
| | Other information: | | | ☐ At least one of the debtors and another | |
| | | | | ☐ Check if this is community property (see instructions) | **$4,750.00**    **$4,750.00** |

| 3.2 | Make: | ***Chevrolet*** | | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|---|
| | Model: | ***One Ton Pick-Up*** | | ☐ Debtor 1 only | |
| | Year: | ***1997*** | | ☐ Debtor 2 only | |
| | Approximate mileage: | ***214,868*** | | ☑ Debtor 1 and Debtor 2 only | **Current value of the entire property?** / **Current value of the portion you own?** |
| | Other information: | | | ☐ At least one of the debtors and another | |
| | | | | ☐ Check if this is community property (see instructions) | **$1,200.00**    **$1,200.00** |

### 4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories

*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☑ No
☐ Yes

5  Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.......................................................................=>  | **$5,950.00** |

| **Part 3:** | **Describe Your Personal and  Household Items** |
|---|---|

| Do you own or have any legal or equitable interest in any of the following items? | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

### 6. Household goods and furnishings

*Examples:* Major appliances, furniture, linens, china, kitchenware

☐ No
☑ Yes.  Describe.....

| *Usual and Ordinary Household Goods and Furnishings* | $2,700.00 |
|---|---|

### 7. Electronics

*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games

☐ No
☑ Yes.  Describe.....

| *Usual and Ordinary Electronics* | $400.00 |
|---|---|

### 8. Collectibles of value

*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

☑ No

---

Official Form 106A/B  Schedule A/B: Property  page 3

| Debtor 1 | *Leroy John Balzer* | | |
|---|---|---|---|
| Debtor 2 | *Karen Ann Balzer* | Case number *(if known)* | **17-10652 TPA** |

☐ Yes. Describe.....

**9.  Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ■ No
   ☐ Yes.  Describe.....

**10.  Firearms**
   *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
   ☐ No
   ■ Yes.  Describe.....

| *2 Mossburg Shotguns* | *$200.00* |
|---|---|

**11.  Clothes**
   *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
   ☐ No
   ■ Yes.  Describe.....

| *Usual and Ordinary Wearing Apparel* | *$300.00* |
|---|---|

**12.  Jewelry**
   *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
   ■ No
   ☐ Yes.  Describe.....

**13.  Non-farm animals**
   *Examples:* Dogs, cats, birds, horses
   ☐ No
   ■ Yes.  Describe.....

| *2 Cats* | *$1.00* |
|---|---|

**14.  Any other personal and household items you did not already list, including any health aids you did not list**
   ■ No
   ☐ Yes.  Give specific information.....

**15.   Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ..............................................................................**   | *$3,601.00* |

| **Part 4:**  Describe Your Financial Assets | |
|---|---|
| **Do you own or have any legal or equitable interest in any of the following?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |

**16.  Cash**
   *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
   ☐ No
   ■ Yes............................................................................................................

| | *Cash* | *$48.00* |
|---|---|---|

**17.  Deposits of money**
   *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
   ☐ No

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                                                  Best Case Bankruptcy

| Debtor 1 | *Leroy John Balzer* | | |
|---|---|---|---|
| Debtor 2 | *Karen Ann Balzer* | Case number *(if known)* | **17-10652 TPA** |

■ Yes.......................

| | | Institution name: | |
|---|---|---|---|
| 17.1. | **Checking** | ***Wife's Checking Account @ Northwest Savings Bank*** | **$100.00** |

| 17.2. | **Checking** | ***Husband's Checking Account @ Key Bank*** | **$46.00** |

18. **Bonds, mutual funds, or publicly traded stocks**
   *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
   ■ No
   ☐ Yes.................      Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
   ■ No
   ☐ Yes.  Give specific information about them...................
            Name of entity:                              % of ownership:

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
   *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
   *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
   ■ No
   ☐ Yes. Give specific information about them
            Issuer name:

21. **Retirement or pension accounts**
   *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
   ■ No
   ☐ Yes. List each account separately.
            Type of account:          Institution name:

22. **Security deposits and prepayments**
   Your share of all unused deposits you have made so that you may continue service or use from a company
   *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
   ■ No
   ☐ Yes. ....................      Institution name or individual:

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
   ■ No
   ☐ Yes.............      Issuer name and description.

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
   26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
   ■ No
   ☐ Yes.............      Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
   ■ No
   ☐ Yes.  Give specific information about them...

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
   *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
   ■ No
   ☐ Yes.  Give specific information about them...

27. **Licenses, franchises, and other general intangibles**
   *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
   ■ No
   ☐ Yes.  Give specific information about them...

| **Money or property owed to you?** | **Current value of the** |
|---|---|

Official Form 106A/B                    Schedule A/B: Property                    page 5

| Debtor 1 | *Leroy John Balzer* | | |
|---|---|---|---|
| Debtor 2 | *Karen Ann Balzer* | Case number *(if known)* | ***17-10652 TPA*** |

portion you own?
Do not deduct secured
claims or exemptions.

28. **Tax refunds owed to you**
☑ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

_____

29. **Family support**
   *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
☑ No
☐ Yes. Give specific information......

30. **Other amounts someone owes you**
   *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security
       benefits; unpaid loans you made to someone else
☑ No
☐ Yes.  Give specific information..

31. **Interests in insurance policies**
   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
☑ No
☐ Yes. Name the insurance company of each policy and list its value.
          Company name:                                    Beneficiary:                          Surrender or refund
                                                                                                                     value:

32. **Any interest in property that is due you from someone who has died**
   If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because
   someone has died.
☑ No
☐ Yes.  Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
      *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
☑ No
☐ Yes.  Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
☑ No
☐ Yes.  Describe each claim.........

35. **Any financial assets you did not already list**
☐ No
☑ Yes.  Give specific information..

| *Hand Tools $1,000.00* | *$1,000.00* |
|---|---|

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
      for Part 4. Write that number here**................................................................................................................

| $1,194.00 |
|---|

**Part 5:**  Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

37. **Do you own or have any legal or equitable interest in any business-related property?**
☑ No. Go to Part 6.
☐ Yes.  Go to line 38.

| Debtor 1 | *Leroy John Balzer* | | |
|---|---|---|---|
| Debtor 2 | *Karen Ann Balzer* | | Case number *(if known)*  **17-10652 TPA** |

---

| **Part 6:** | **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.** |
|---|---|
| | If you own or have an interest in farmland, list it in Part 1. |

**46.  Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

■ No. Go to Part 7.

☐ Yes.  Go to line 47.

---

| **Part 7:** | **Describe All Property You Own or Have an Interest in That You Did Not List Above** |
|---|---|

**53.  Do you have other property of any kind you did not already list?**

*Examples:* Season tickets, country club membership

■ No

☐ Yes. Give specific information.........

**54.  Add the dollar value of all of your entries from Part 7. Write that number here  ....................................**            $0.00

---

| **Part 8:** | **List the Totals of Each Part of this Form** |
|---|---|

| | | |
|---|---|---|
| 55.  **Part 1: Total real estate, line 2** .................................................................................... | | $314,000.00 |
| 56.  **Part 2: Total vehicles, line 5** | $5,950.00 | |
| 57.  **Part 3: Total personal and household items, line 15** | $3,601.00 | |
| 58.  **Part 4: Total financial assets, line 36** | $1,194.00 | |
| 59.  **Part 5: Total business-related property, line 45** | $0.00 | |
| 60.  **Part 6: Total farm- and fishing-related property, line 52** | $0.00 | |
| 61.  **Part 7: Total other property not listed, line 54** + | $0.00 | |
| 62.  **Total personal property.** Add lines 56 through 61... | $10,745.00 | Copy personal property total ▶ $10,745.00 |
| 63.  **Total of all property on Schedule A/B**. Add line 55 + line 62 | | $324,745.00 |

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                                                    Best Case Bankruptcy

Leroy John Balzer and Karen Ann Balzer
Case No. 17-10652 TPA
Attachment to Schedule A/B

## 706 Linden Avenue, Erie, Pennsylvania  16505

The real estate located at 706 Linden Avenue, Erie, Pennsylvania acquired by virtue of a Deed dated August 18, 2000 and recorded on August 23, 2000 in Erie County Record Book 722, Page 672 for purchase price of $68,500.00 subject to a Mortgage in favor of Countrywide Home Loans, Inc. dated August 18, 2000 and recorded on August 23, 2000 in Erie County Record Book 722, Page 676 in the face amount of $51,375.00 and an Assignment of Mortgage in favor of Bank of America, successor by merger to BAC Home Loan Servicing LLC f/k/a Countrywide Home Loans Servicing dated April 5, 2012 and recorded on April 17, 2012 at Erie County Instrument No. 2012-009340 and an Assignment of Mortgage in favor of Greentree Servicing LLC dated June 18, 2013 and recorded on June 11, 2013 at Erie County Instrument No. 2013-017756.

## 3623-3633 West Lake Road, Erie, Pennsylvania

The real estate located at 3623-3633 West Lake Road, Erie, Pennsylvania acquired by virtue of a Deed dated September 30, 1997 and recorded on October 1, 1997 in Erie County Record Book 521, Page 1889 for a purchase price of $180,000.00 subject to a Mortgage in favor of Sky Bank dated June 22, 2000 and recorded on June 28, 2000 in Erie County Record Book 711, Page 2132 in the face amount of $63,000.00.

The real estate at 3633 West Lake Road, Erie, Pennsylvania was subject to a Mortgage in favor of National City Bank of Pennsylvania dated September 30, 1997 and recorded on October 1, 1997 in Erie County Record Book 521, Page 1892.  Said Mortgage was assigned to National City Mortgage Company by Assignment recorded in Erie County Record Book 521, Page 1899. A Partial Release of Mortgage relating to 3633 West Lake Road, Erie, Pennsylvania was recorded on February 22, 2000 in Erie County Record Book 688, Page 789.  On March 27, 2015 the Mortgage in favor of National City Bank of Pennsylvania originally recorded in Record Book 521, Page 1892 was re-recorded at Erie County Instrument No. 2015-005669.  Said re-recorded Mortgage includes a Re-Affirmation, Re-Execution, and Re-Acknowledgement of Previously Recorded Deed of Trust that purports to revise the Legal Description to be the real estate located at 3623 West Lake Road, Erie, Pennsylvania.  A Loan Modification Agreement was recorded on May 31, 2017 at Erie County Instrument No. 2017-011047 in regards to this re-recorded Mortgage that references the property at 3623 West Lake Road, Erie, Pennsylvania.

#1063725

**Address: 706 LINDEN AVE    Owner: BALZER LEROY J UX KAREN A    Parcel: 33018082000400**

| Parcel Profile | |
| --- | --- |
| Address | 706 \| LINDEN \| AVE |
| Street Status | PAVED |
| School District | MILLCREEK SCHOOL |
| Acreage | 0.1263 |
| Classification | R |
| Land Use Code | SINGLE FAMILY |
| Legal Description | 706 LINDEN AVE 55X100 |
| Square Feet | 1352 |
| Topo | LEVEL |
| Utility | ALL PUBLIC |
| Zoning | Please contact your municipal zoning officer |
| Deed Book | 722 |
| Deed Page | 672 |
| 2017 Tax Values | |
| Land Value / Taxable | 19,700 / 19,700.00 |
| Building Value / Taxable | 73,400 / 73,400.00 |
| Total Value / Taxable | 93,100 / 93,100.00 |
| Clean & Green | Inactive |

Erie County, Pennsylvania      Page 2 of 8
Case 17-10652-TPA    Doc 13    Filed 07/14/17    Entered 07/14/17 11:33:38    Desc Main
Document    Page 12 of 145

| | |
|---|---|
| Homestead Status | Inactive |
| Farmstead Status | Inactive |
| Lerta Amount | 0 |
| Lerta Expiration Year | 0 |

Residential Data

**Card 1**

| | |
|---|---|
| Style | CONVENTIONAL |
| Basement | FULL |
| Year Built | 1924 |
| Exterior Wall | ALUMINUM/VINYL |
| Total Living Area | 1352 |
| Full Baths | 1 |
| Half Baths | 1 |
| Fuel Type | GAS |
| Heating | CENTRAL |
| Heating System | FORCED AIR |
| Stories | 2.0 |
| Total Bedrooms | 3 |
| Total Family Rooms | 0 |
| Total Rooms | 6 |
| Fireplaces | 0 |

Other Buildings & Yards

| Description | Built | Width | Length | Area |
|---|---|---|---|---|
| FRAME OR CB DETACHED GARAGE | 1940 | 0 | 18 | 324 |

Sales History

| Sale Date | From | To | Type | Price | Book / Page | Other Info |
|-----------|------|----|------|-------|-------------|------------|
| 8/23/2000 | | LEROY J BALZER ETAL | LAND & BUILDING | 68500 | 722 / 672 | |
| 3/8/1972 | | | | 0 | 1063 / 0180 | |
| 2/4/1972 | | | | 0 | 1061 / 0486 | |
| 3/21/1928 | | | | 0 | 0321 / 0445 | |

# Parcel Sketches

# Residential Card 1



| | | |
|---|---|---|
| **A** | MAIN | 676 square feet |
| **B** | MA STOOP/TERR MAS STOOP | 16 square feet |
| **C** | UNFIN BSMT BASEMENT UNFINISHED EFP ENCL FRAME PORCH | 156 square feet |
| **D** | EFP ENCL FRAME PORCH | 88 square feet |

# Parcel Images



# Annual Taxes

**Attention City of Erie Residents**
**Please be advised that due to the recent change in the billing cycle for the City of Erie school taxes, the total for Year 2012 (school tax column) will now include the total amounts for both the 2011-12 AND the 2012-13 tax years.**

| Year | County | City/Township | School | Library | Total |
|------|--------|---------------|--------|---------|-------|
| 2017 | 503.67 | 330.85 | 1287.46 | 0 | 2121.98 |
| 2016 | 480.40 | 330.85 | 1282.81 | 0 | 2094.06 |
| 2015 | 458.98 | 330.85 | 1264.47 | 0 | 2054.30 |
| 2014 | 458.98 | 330.85 | 1236.05 | 0 | 2025.88 |
| 2013 | 458.98 | 237.75 | 1179.58 | 0 | 1876.31 |

| 2012 | 427.98 | 209.35 | | 1052.61 | 0 | 1689.94 |
| 2011 | 427.98 | 173.98 | | 1052.61 | 0 | 1654.57 |
| 2010 | 427.98 | 173.98 | | 1034.93 | 0 | 1636.89 |
| 2009 | 385.53 | 173.98 | | 1000.26 | 0 | 1559.77 |
| 2008 | 367.85 | 173.98 | | 1000.26 | 0 | 1542.09 |
| 2007 | 350.16 | 173.98 | | 1000.26 | 0 | 1524.40 |
| 2006 | 350.16 | 173.98 | | 1000.26 | 0 | 1524.40 |
| 2005 | 331.06 | 173.98 | | 974.09 | 0 | 1479.13 |
| 2004 | 331.06 | 180.37 | | 928.11 | 0 | 1439.54 |
| 2003 | 325.40 | 180.37 | | 883.54 | 0 | 1389.31 |

# Delinquent Taxes

| Tax Year 2005 | Tax | Penalty | Interest | Total | Paid/Exon | Balance |
| --- | --- | --- | --- | --- | --- | --- |
| COUNTY | 331.06 | 33.11 | 49.16 | 413.33 | 413.33 | 0.00 |
| TWP/BORO/CITY | 173.98 | 17.40 | 25.84 | 217.22 | 217.22 | 0.00 |
| LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL | 974.09 | 97.41 | 144.65 | 1,216.15 | 1,216.15 | 0.00 |
| SCHOOL LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| *FEES* | | | | 128.00 | 128.00 | 0.00 |
| | | | | **2005 Total Due:** | | **$0.00** |

| Tax Year 2006 | Tax | Penalty | Interest | Total | Paid/Exon | Balance |
| --- | --- | --- | --- | --- | --- | --- |
| COUNTY | 350.16 | 35.02 | 52.00 | 437.18 | 437.18 | 0.00 |
| TWP/BORO/CITY | 173.98 | 17.40 | 25.84 | 217.22 | 217.22 | 0.00 |
| LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL | 1,000.26 | 100.03 | 148.54 | 1,248.83 | 1,248.83 | 0.00 |
| SCHOOL LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| *FEES* | | | | 178.00 | 178.00 | 0.00 |
| | | | | **2006 Total Due:** | | **$0.00** |

Erie County, Pennsylvania                                                 Page 7 of 8
Case 17-10652-TPA    Doc 13    Filed 07/14/17    Entered 07/14/17 11:33:38    Desc Main
Document     Page 17 of 145

| Tax Year 2007 | Tax | Penalty | Interest | Total | Paid/Exon | Balance |
|---|---|---|---|---|---|---|
| COUNTY | 350.16 | 35.02 | 46.22 | 431.40 | 431.40 | 0.00 |
| TWP/BORO/CITY | 173.98 | 17.40 | 22.97 | 214.35 | 214.35 | 0.00 |
| LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL | 1,000.26 | 100.03 | 132.03 | 1,232.32 | 1,232.32 | 0.00 |
| SCHOOL LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| *FEES* | | | | 99.00 | 99.00 | 0.00 |
| | | | | | **2007 Total Due:** | **$0.00** |

| Tax Year 2008 | Tax | Penalty | Interest | Total | Paid/Exon | Balance |
|---|---|---|---|---|---|---|
| COUNTY | 367.85 | 36.79 | 12.14 | 416.78 | 416.78 | 0.00 |
| TWP/BORO/CITY | 173.98 | 17.40 | 5.74 | 197.12 | 197.12 | 0.00 |
| LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL | 1,000.26 | 100.03 | 33.01 | 1,133.30 | 1,133.30 | 0.00 |
| SCHOOL LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| *FEES* | | | | 69.00 | 69.00 | 0.00 |
| | | | | | **2008 Total Due:** | **$0.00** |

**Grand Total Due:**    **$0.00**

# Owner Info

**PARCEL ID:** 33-018-082.0-004.00
**OWNER 1:**    BALZER LEROY J UX KAREN A
**OWNER 2:**
**ADDRESS 1:** 3623 W LAKE RD
**ADDRESS 2:**
**ADDRESS 3:**

**CITY:**      ERIE
**STATE:**     PA
**ZIP 1:**     16505
**ZIP 2:**     3401
**LEGAL 1:**   706 LINDEN AVE 55X100
**LEGAL 2:**
**LEGAL 3:**

BK 0722 PG 0672

## SPECIAL WARRANTY DEED

THIS INDENTURE, made the 18th day of August in the year of our Lord two thousand,

BETWEEN:    MARIE ORTON STEINER, also known as MARIE A. STEINER, by her Attorney-in-Fact, RICHARD O. ANTHONY, widow, of 6581 Sherrod Hill Road, Edinboro, Pennsylvania 16412, Grantor

AND

LeROY J. BALZER and KAREN A. BALZER of the Township of Millcreek, County of Erie and Commonwealth of Pennsylvania, as tenants by the entirety, Grantees

WITNESSETH, that Grantor(s), for and in consideration of the sum of SIXTY-EIGHT THOUSAND FIVE HUNDRED AND NO/HUNDREDTHS ($68,500.00) Dollars, lawful money of the United States to him/her/them/it in hand paid by the said Grantee(s), at and before the ensealing and delivery of these presents, the receipt and payment whereof is hereby acknowledged, has/have granted, bargained, sold, released and confirmed, and by these presents does/do grant, bargain, sell, release and confirm unto the said Grantee(s), and to his/her/their/its heirs, successors and assigns forever, all that certain piece or parcel of land situate in the Township of Millcreek, County of Erie and State of Pennsylvania, being the south fifty-five (55) feet ot Lots Numbers Ten (10) and Eleven (11) of "ORTH FARM GARDENS" Subdivision, a plan of said subdivision being recorded in Map Book No. 2, Pages 178 and 179, in the Office of the Recorder of Deeds in and for the said County of Erie, Pennsylvania, being more fully described as follows, to-wit: BEGINNING at a point in the west line of Linden Avenue, at the southeast corner of Lot Number Eleven (11) of Orth Farm Gardens Subdivision; thence westwardly along the south line of Lots Numbers Ten (11) and Eleven (11), one hundred (100) feet, more or less, to the east line of Lot Number Nine (9); thence northwardly along the line dividing Lots Numbers Nine (9) and Ten (10), fifty-five (55) feet; thence eastwardly parallel with the south line of Lots Numbers Ten (10) and Eleven (11), one hundred (100) feet, more or less, to the west line of Linden Avenue; thence southwardly along the west line of Linden Avenue fifty-five (55) feet to the place of beginning.

The above-described property is more commonly known as 706 Linden Avenue, Erie, Pennsylvania, and is further identified by Erie County Tax Index Number (33)18-82-4.

Being the same premises conveyed to Grantor, Marie Orton Steiner, and her late husband, Edwin H. Steiner, by Deed dated February 29, 1972 and recorded _____ in Erie County Deed Book 1063 at Page 180. Edwin H. Steiner died on _2-15-89_, vesting all right, title and interest in his surviving spouse as evidenced in the records of the Register of Wills of Erie

County, Pennsylvania.

Grantor, Marie A. Steiner, also known as Marie Orton Steiner, granted a Power of Attorney, dated September 1, 1999, to Richard O. Anthony, which is intended to be recorded of even date and just prior to the recording of this Deed in the Office of the Recorder of Deeds of Erie County, Pennsylvania.

No hazardous waste has ever been disposed on the above-described property to the best of Grantor's knowledge pursuant to Act 97 of 1980.

This Deed is taken under and subject to all easements, restrictions and rights-of-way of record and/or those that are visible to a physical inspection.

BK0722PG0674

2000 AUG 23 P 3: 23 0↑
RECORDER OF DEEDS
ERIE COUNTY, PA.

Erie County - Recorder of Deeds
Instrument Filing

Receipt# 436950

Instr# 2000-027671      8/23/2000      15:18:59
                Book# 0722  Page# 0672
Remarks:  NELSON/STEINER/BALZER
          RT 3:23 PM SLS

DEED
DEED - WRIT                          13.00
DEED - RTT STATE                       .50
MILLCREEK S.D.                       685.00
MILLCREEK TWP                        342.50
LOW INCOME HOUSING                   342.50
ERIE CO MGT ACCT                      10.50
ROD REC MGT ACCT                       1.00
Check# 2549                            1.00
Total Received.......            $1,396.00
                                 $1,396.00

TOGETHER with all and singular the rights, liberties, privileges, hereditaments, improvements, and appurtenances, whatsoever thereto belonging, and the reversions and remainders, rents, issues and profits thereof, and, also, all the estate and interest whatsoever of the the Grantor(s), in law or equity, of, in, to or out of the same;

AND the said Grantor(s), for himself/herself/themselves/itself, his/her/their/its heirs, executors and administrators, does/do covenant, promise and agree, to and with the said Grantee(s), his/her/their/its heirs and assigns, by these presents, that he/she/they/it, the said Grantor(s) and his/her/their/its heirs, all and singular the hereditaments and premises hereby granted or mentioned and intended so to be, with the appurtenances, unto the said Grantee(s), his/her/their/its heirs and assigns, against him/her/them/it, the said Grantor(s) and his/her/their/its heirs, and against all and every person and persons whomsoever lawfully claiming or to claim the same or any part thereof, by, from or under him/her/them/it or any of them, shall and will, subject as aforesaid, WARRANT SPECIALLY and forever DEFEND by these presents.

IN WITNESS WHEREOF, the said Grantor(s) has/have set his/her/their hand(s) and seal(s) the day and year first above written.

SIGNED, SEALED and DELIVERED
in the presence of

_Marie Orton Steiner_
MARIE ORTON STEINER

_Marie A. Steiner_
MARIE A. STEINER

BY: _Richard O. Anthony POA_
RICHARD O. ANTHONY, Attorney-in-Fact

STATE OF PENNSYLVANIA        :
                             :  SS.
COUNTY OF ERIE               :

On this, the 18th day of August , 2000, before me, a Notary Public, the undersigned                                       officer,                    personally appeared Marie Orton Steiner a/k/a Marie A. Steiner, by her Attorney-in-Fact Richard O. Anthony, widow , known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

NOTARIAL SEAL
SARA A. DODD, NOTARY PUBLIC
EDINBORO, ERIE COUNTY, PENNSYLVANIA
MY COMMISSION EXPIRES AUGUST 24, 2002

_Sara A. Dodd_
Notary

I, _Michael O. Keenan_, hereby certify that the residence of the within Grantee(s) is _362-3 West Lake Road, Erie, Pa 16505_ .

2000 AUG 23  P 3:24 ?

RECORDER OF DEEDS
ERIE COUNTY, PA.

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
1800 TAPO CANYON ROAD
SIMI VALLEY, CA 93063

Prepared By:
P. THOMAS

Parcel Number: ( 33 ) - 18-82-04

———————————— [Space Above This Line For Recording Data] ————————————

[Loan #]

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated AUGUST 18, 2000 together with all Riders to this document.
(B) "Borrower" is
LEROY J BALZER, HUSBAND AND WIFE AND KAREN A BALZER, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16

Initials: _____



●-6A(PA) (0000)     CHL (06/00)     VMP MORTGAGE FORMS - (800)521-7291
CONV/VA

Form 3039  3/99



# ORIGINAL

# EXHIBIT A

all that certain piece or parcel of land situate in the Township of Millcreek, County of Erie and State of Pennsylvania, being the south fifty-five (55) feet ot Lots Numbers Ten (10) and Eleven (11) of "ORTH FARM GARDENS" Subdivision, a plan of said subdivision being recorded in Map Book No. 2, Pages 178 and 179, in the Office of the Recorder of Deeds in and for the said County of Erie, Pennsylvania, being more fully described as follows, to-wit: BEGINNING at a point in the west line of Linden Avenue, at the southeast corner of Lot Number Eleven (11) of Orth Farm Gardens Subdivision; thence westwardly along the south line of Lots Numbers Ten (11) and Eleven (11), one hundred (100) feet, more or less, to the east line of Lot Number Nine (9); thence northwardly along the line dividing Lots Numbers Nine (9) and Ten (10), fifty-five (55) feet; thence eastwardly parallel with the south line of Lots Numbers Ten (10) and Eleven (11), one hundred (100) feet, more or less, to the west line of Linden Avenue; thence southwardly along the west line of Linden Avenue fifty-five (55) feet to the place of beginning.

Tax Identification No. 33-18-82-04

Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
1800 TAPO CANYON ROAD
SIMI VALLEY, CA 93063

———————————————— [Space Above This Line For Recording Data] ————————————————

# 1-4 FAMILY RIDER
### Assignment of Rents

PARCEL ID #:

Prepared By:
P. THOMAS

[Loan #]

**MULTISTATE 1-4 FAMILY RIDER -Fannie Mae/Freddie Mac Uniform Instrument**
Page 1 of 4
 -57R (9912)   CHL (04/00)    VMP MORTGAGE FORMS - (800)521-7291

Initials _____
Form 3170 3/99



# ORIGINAL

LOAN #: ████████

THIS 1-4 FAMILY RIDER is made this EIGHTEENTH day of AUGUST, 2000 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
706 LINDEN AVENUE, ERIE, PA 16505-

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

ORIGINAL

LOAN #: ██████████

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Initials: ZB KK

ORIGINAL

LOAN #: ▮▮▮▮▮▮▮▮

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
LEROY J BALZER                                    - Borrower

_____ (Seal)
KAREN A BALZER                                    - Borrower

_____ (Seal)
                                                  - Borrower

_____ (Seal)
                                                  - Borrower

⬤®-57R (9812)        CHL (04/00)            Page 4 of 4

Initials: _____
Form 3170 3/99

ORIGINAL

LOAN #: ▮▮▮▮▮▮▮

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 PARK GRANADA, CALABASAS, CA 91302-1613

**(E) "Note"** means the promissory note signed by Borrower and dated AUGUST 18, 2000
The Note states that Borrower owes Lender
FIFTY ONE THOUSAND THREE HUNDRED SEVENTY FIVE and 00/100      Dollars
(U.S. $   51,375.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   SEPTEMBER 01, 2030

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

Initials: *L.B. KB*

-6A(PA) (0008)      CHL (08/00)      Page 2 of 16      Form 3039 3/99

# ORIGINAL

LOAN #: 

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS the following described property located in the

COUNTY                                          of ERIE
            [Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of
706 LINDEN AVENUE, ERIE
                                      [Street/City]
Pennsylvania 16505-          ("Property Address"):
            [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Initials: _____

-6A(PA) (0006)      CHL (08/00)              Page 3 of 16                          Form 3039 3/99

# ORIGINAL

LOAN #: ████████████

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more

ORIGINAL

LOAN #: ▓▓▓▓▓▓

Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as

@●●-6A(PA) (0006)       CHL (06/00)              Page 5 of 16                    Initials: _____       Form 3039  3/99

ORIGINAL

**LOAN #▮** ▮▮▮▮▮▮▮

defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall

-6A(PA)(0006)      CHL (08/00)           Page 6 of 16                    Initials: R.B.  K.B.
                                                                        Form 3039 3/99

# ORIGINAL

**LOAN #:** ███████

become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent

Initials: _____

██-6A(PA) (0006)    CHL (08/00)    Page 7 of 16    Form 3039 3/99

# ORIGINAL

LOAN #: ████████

the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Initials: _L.B._ _K.B._

-6A(PA) (0008)    CHL (08/00)          Page 8 of 16         Form 3039 3/99

**ORIGINAL**

LOAN #: ▮▮▮▮

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the

Initials: _LB_ _KB_

-6A(PA) (0008)   CHL (06/00)   Page 9 of 16   Form 3039 3/99

ORIGINAL

LOAN #: ▮▮▮▮▮

following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Initials: _LB_ _KB_

-6A(PA) (0008)   CHL (08/00)          Page 10 of 16          Form 3039 3/99

# ORIGINAL

BK 0722PG0691

LOAN #: ▮▮▮▮▮▮▮

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

Initials: _RB_ _KB_.

-6A(PA) (0005)      CHL (06/00)            Page 11 of 16                         Form 3039 3/99

# ORIGINAL

LOAN #: 

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) word in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the

Initials: _____

ORIGINAL

LOAN #: ▮▮▮▮▮▮▮

address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: *PB KB*

Form 3039 3/99

-6A(PA) (0008)    CHL (08/00)    Page 13 of 16

# ORIGINAL

BK0722PG0694

LOAN #: ▓▓▓▓▓▓

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. **Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. **Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. **Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

Initials _RB_ _KB_.

⁽ᵐᵐᵖ⁾-6A(PA) (0006)    CHL (08/00)        Page 14 of 16        Form 3039 3/99

# ORIGINAL

LOAN #: ▓▓▓▓▓▓▓

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ (Seal)
LEROY J BALZER                    -Borrower

_____ (Seal)
KAREN A BALZER                    -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

-6A(PA) (0006)    CHL (06/00)        Page 15 of 16        Form 3039 3/99

ORIGINAL

BK0722PG0696

LOAN #: ▮▮▮▮▮▮▮

**Certificate of Residence**

I, *MICHAEL G. NELSON, Esq* , do hereby certify that the correct address of the within-named Mortgagee is
*4500 PARK GRANDA, ACABASAS CA 91302-1613*
Witness my hand this *18* day of *August* *2000*.

*[signature]*

Agent of Mortgagee

**COMMONWEALTH OF PENNSYLVANIA,**                    *Erie*                    **County ss:**

On this, the *18* day of *August* *2000* , before me, the undersigned officer, personally appeared

*LEROY J. BALZER + KAREN A. BALZER, h/w*

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

*[signature]*

Title of Officer

Notarial Seal
Michael G. Nelson, Notary Public
Millcreek Twp., Erie County
My Commission Expires July 15, 2004

-6A(PA) (0006)    CHL (06/00)    Page 16 of 16    Initials: *LB KB*    Form 3039 3/99

# ORIGINAL

2012009340

Recording Requested By:
**Bank of America**
Prepared By:
**Danilo Cuenca**
**888-603-9011**
**450 E. Boundary St.**
**Chapin, SC 29036**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**

DocID#
Tax ID: (33)-18-82-04
Property Address:
**706 Linden Ave**
**Erie, PA 16505-3421**
Property Location:
**Township of MILLCREEK**

PAO-AM 17871719          4/5/2012

MIN #: ▮▮▮▮▮          MERS Phone #: 888-679-6377

This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP** whose address is **13150 WORLD GATE DR, HERNDON, VA 20170** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Original Lender:     **COUNTRYWIDE HOME LOANS, INC.**
Mortgagor(s):     **LEROY J BALZER, HUSBAND AND WIFE AND KAREN A BALZER, HUSBAND AND WIFE**

Date of Mortgage: 8/18/2000     Original Loan Amount: **$51,375.00**

Recorded in Erie County, PA on: 8/23/2000, book 0722, page 0676 and instrument number 027672

This Mortgage has not been assigned unless otherwise stated below:

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
4/5/12

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: _____

~~Christopher Herrera Assistant Secretary~~

State of California
County of Ventura

On **4 - 5 - 12** before me, **Norma Rojas** _____, Notary Public, personally appeared
**Christopher Herrera**
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity
(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public:       *Norma Rojas*       (Seal)
My Commission Expires: _____ *Feb 14, 2015*



NORMA ROJAS
Commission # 1925662
Notary Public - California
Ventura County
My Comm. Expires Feb 14, 2015

I hereby certify that the address of the within named assignee is:
**13150 WORLD GATE DR, HERNDON, VA 20170**

Signature

DocID#        292463928518086



2012-009340

# RECORDER OF DEEDS DIVISION

ERIE COUNTY COURTHOUSE◆140 W. 6TH STREET, P.O. BOX 1849◆ERIE
PENNSYLVANIA 16507 PHONE: (814) 451-6246 FAX:(814) 451-6213
EMAIL: recorder@eriecountygov.org

**PATRICK L. FETZNER**
**CLERK OF RECORDS**

Instrument Number: 2012-009340

Instrument Type: ASSIGNMENT/MORTGAG

| | |
|---|---|
| Record Date: | 4/17/2012 |
| Record Time: | 08:24:48 |
| Receipt No.: | 997775 |

## Receipt Distribution

| Fee/Tax Description | Payment Amount |
|---|---|
| ASSIGNMENT/MORTGAG | 13.00 |
| ASSIGN/MORT- WRIT | .50 |
| J.C.S. / A.T.J | 23.50 |
| CO REC MGT ACCT | 2.00 |
| ROD REC MGT ACCT | 3.00 |
| | ---------------- |
| Check# 4849 | $42.00 |
| Total Received........ | $42.00 |

Recording Page Count:   3

Paid By Remarks: CORELOGIC/BALZER
                 EP

I HEREBY CERTIFY THAT THIS DOCUMENT
IS RECORDED IN THE RECORDER OF DEEDS
OFFICE OF ERIE COUNTY, PENNSYLVANIA

*Patrick L. Fetzner*

PATRICK L. FETZNER
ERIE COUNTY CLERK OF RECORDS

Certification Page
## DO NOT DETACH
This page is now part of this legal document.

NOTE:   Some information subject to change during the verification process and may not be reflected on this page.

2013 017756

Recording Requested By:
**Bank of America**
Prepared By:
**Noor Sadruddin**

**16001 N. Dallas Pkwy**
**Addison, TX 75001**
When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**

DocID#
Tax ID:      (33)-18-82-04
Property Address:
**706 Linden Ave**
**Erie, PA 16505-3421**
Property Location:
**Township of MILLCREEK**
PAO-AM  25495685   6/5/2013  GT0531B

This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **GREEN TREE SERVICING LLC** whose address is **7360 S. KYRENE ROAD, TEMPE, AZ 85283** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Original Lender:            **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.**

Mortgagor(s):              **LEROY J BALZER, HUSBAND AND WIFE AND KAREN A BALZER, HUSBAND AND WIFE**

Date of Mortgage:  8/18/2000       Original Loan Amount:  **$51,375.00**

Recorded in Erie County, PA on: 8/23/2000, book **0722**, page **0676** and instrument number **027672**

This Mortgage has not been assigned unless otherwise stated below:
Assigned From:  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
Assigned To:  BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP
Recording Date: 4/17/2012 Book/Liber:  Page:  Instrument Number: 2012-009340

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
6-10-13

Bank of America, N.A.

By: _Sandra Jerome Thomas_
Sandra Jerome-Thomas
Assistant Vice President

State of TX, County of _DALLAS_

On _6-18-13_ , before me, _ROCHELLE A. MARTIN_ , a Notary Public, personally
appeared ____Sandra Jerome-Thomas____ , ____Assistant Vice President____ of Bank of
America, N.A. personally known to me to be the person(s) whose name(s) is/are subscribed to the within document
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted,
executed the instrument.

Witness my hand and official seal.

_Rochelle A Martin_

Notary Public: _ROChelle A. MArtin_
My Commission Expires: _7-18-16_

ROCHELLE A. MARTIN
Notary Public, State of Texas
My Commission Expires
07/18/2016

I hereby certify that the address of the within named assignee is:
**7360 S. KYRENE ROAD, TEMPE, AZ 85283**

_Sandra Jerome Thomas_
**Signature**



# RECORDER OF DEEDS DIVISION

ERIE COUNTY COURTHOUSE 140 W. 6TH STREET, ERIE, PA 16501
Mailing Address: P.O. Box 1849, Erie, Pennsylvania 16512
PHONE: (814) 451-6246  FAX: (814) 451-6213
EMAIL: recorder@eriecountygov.org

PATRICK L. FETZNER
CLERK OF RECORDS

2013-017756

Instrument Number: 2013-017756

Instrument Type: ASSIGNMENT/MORTGAG

Record Date:    7/11/2013
Record Time:    02:58:49
Receipt No.:    1045580

## Receipt Distribution

| Fee/Tax Description | Payment Amount |
| --- | --- |
| ASSIGNMENT/MORTGAG | 13.00 |
| ASSIGN/MORT- WRIT | .50 |
| J.C.S. / A.T.J | 23.50 |
| CO REC MGT ACCT | 2.00 |
| ROD REC MGT ACCT | 3.00 |
| Check# 895 | $42.00 |
| Total Received........ | $42.00 |

Recording Page Count:    3

Paid By Remarks: CORELOGIC/BALZER
JLH

I HEREBY CERTIFY THAT THIS DOCUMENT
IS RECORDED IN THE RECORDER OF DEEDS
OFFICE OF ERIE COUNTY, PENNSYLVANIA

PATRICK L. FETZNER
ERIE COUNTY CLERK OF RECORDS

Certification Page
## DO NOT DETACH
This page is now part of this legal document.

NOTE:  Some information subject to change during the verification process and may not be reflected on this page.

**Address: 3623 W LAKE RD    Owner: BALZER LEROY J UX KAREN A    Parcel: 33018082000300**

| Parcel Profile | |
| --- | --- |
| Address | 3623 \| W \| LAKE \| RD |
| Street Status | PAVED |
| School District | MILLCREEK SCHOOL |
| Acreage | 0.8586 |
| Classification | R |
| Land Use Code | SINGLE FAMILY |
| Legal Description | 3623 W LAKE RD 155.46X250.5 IR |
| Square Feet | 2240 |
| Topo | LEVEL |
| Utility | ALL PUBLIC |
| Zoning | Please contact your municipal zoning officer |
| Deed Book | 521 |
| Deed Page | 1889 |
| 2017 Tax Values | |
| Land Value / Taxable | 25,700 / 25,700.00 |
| Building Value / Taxable | 141,560 / 141,560.00 |
| Total Value / Taxable | 167,260 / 167,260.00 |
| Clean & Green | Inactive |

| | |
|---|---|
| Homestead Status | Active |
| Farmstead Status | Inactive |
| Lerta Amount | 0 |
| Lerta Expiration Year | 0 |

Residential Data

**Card 1**

| | |
|---|---|
| Style | CONVENTIONAL |
| Basement | FULL |
| Year Built | 1924 |
| Exterior Wall | BRICK |
| Total Living Area | 2240 |
| Full Baths | 1 |
| Half Baths | 1 |
| Fuel Type | GAS |
| Heating | CENTRAL |
| Heating System | HOT WATER |
| Stories | 2.0 |
| Total Bedrooms | 3 |
| Total Family Rooms | 0 |
| Total Rooms | 7 |
| Fireplaces | 1 |

Other Buildings & Yards

| Description | Built | Width | Length | Area |
|---|---|---|---|---|
| FRAME OR CB DETACHED GARAGE | 1930 | 0 | 24 | 480 |

Erie County, Pennsylvania    Page 3 of 12
Case 17-10652-TPA    Doc 13    Filed 07/14/17    Entered 07/14/17 11:33:38    Desc Main
Document    Page 52 of 145

| | | | | | | |
|---|---|---|---|---|---|---|
| FRAME UTILITY SHED | | 1970 | 0 | 11 | 110 |
| REINFORCED CONCRETE POOL | | 1973 | 0 | 36 | 648 |
| DIVING BOARD | | 1973 | 0 | 1 | 1 |

## Sales History

| Sale Date | From | To | Type | Price | Book / Page | Other Info |
|---|---|---|---|---|---|---|
| 9/30/1997 | SHEARER ROBERT L | BALZER LEROY J UX KAREN A | LAND & BUILDING | 150000 | 521 / 1889 | |
| 8/20/1965 | | | | 0 | 0923 / 0110 | |

# Parcel Sketches

## Residential Card 1



| | | |
|---|---|---|
| **A** | MAIN | 1120 square feet |
| **B** | OFP OPEN FRAME PORCH | 48 square feet |
| **C** | EMP ENCL MASONRY PORCH WDDCK WOOD DECKS | 160 square feet |
| **D** | OMP OPEN MASONRY PORCH WDDCK WOOD DECKS | 100 square feet |
| **E** | EMP ENCL MASONRY PORCH | 66 square feet |

# Parcel Images





# Annual Taxes

**Attention City of Erie Residents**
**Please be advised that due to the recent change in the billing cycle for the City of Erie
school taxes, the total for Year 2012 (school tax column) will now include the total amounts
for both the 2011-12 AND the 2012-13 tax years.**

| Year | County | City/Township | School | Library | Total |
|------|--------|---------------|--------|---------|-------|
| 2017 | 904.88 | 594.39 | 2244.61 | 0 | 3743.88 |
| 2016 | 863.06 | 594.39 | 2236.24 | 0 | 3693.69 |
| 2015 | 824.59 | 594.39 | 2203.45 | 0 | 3622.43 |
| 2014 | 824.59 | 594.39 | 2152.40 | 0 | 3571.38 |
| 2013 | 824.59 | 427.13 | 2051.13 | 0 | 3302.85 |
| 2012 | 728.18 | 356.19 | 1722.67 | 0 | 2807.04 |
| 2011 | 728.18 | 296.01 | 1721.65 | 0 | 2745.84 |

| | | | | | | |
|------|--------|--------|---------|---|---------|
| 2010 | 728.18 | 296.01 | 1690.13 | 0 | 2714.32 |
| 2009 | 655.96 | 296.01 | 1630.09 | 0 | 2582.06 |
| 2008 | 625.87 | 296.01 | 1628.14 | 0 | 2550.02 |
| 2007 | 595.78 | 296.01 | 1701.89 | 0 | 2593.68 |
| 2006 | 595.78 | 296.01 | 1701.89 | 0 | 2593.68 |
| 2005 | 563.28 | 296.01 | 1657.36 | 0 | 2516.65 |
| 2004 | 563.28 | 306.89 | 1579.12 | 0 | 2449.29 |
| 2003 | 553.66 | 306.89 | 1503.30 | 0 | 2363.85 |

# Delinquent Taxes

| Tax Year 2003 | Tax | Penalty | Interest | Total | Paid/Exon | Balance |
|---------------|------|---------|----------|-------|-----------|---------|
| COUNTY | 0.01 | 0.00 | 0.00 | 0.01 | 0.01 | 0.00 |
| TWP/BORO/CITY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| *FEES* | | | | 15.00 | 15.00 | 0.00 |

2003 Total Due:  **$0.00**

| Tax Year 2004 | Tax | Penalty | Interest | Total | Paid/Exon | Balance |
|---------------|---------|---------|----------|---------|-----------|---------|
| COUNTY | 563.28 | 56.32 | 113.36 | 732.96 | 732.96 | 0.00 |
| TWP/BORO/CITY | 306.89 | 30.68 | 61.76 | 399.33 | 399.33 | 0.00 |
| LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL | 1,579.12 | 157.88 | 317.80 | 2,054.80 | 2,054.80 | 0.00 |
| SCHOOL LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| *FEES* | | | | 110.00 | 110.00 | 0.00 |

2004 Total Due:  **$0.00**

Erie County, Pennsylvania                            Page 8 of 12
Case 17-10652-TPA    Doc 13    Filed 07/14/17    Entered 07/14/17 11:33:38    Desc Main
Document      Page 57 of 145

| Tax Year 2005 | Tax | Penalty | Interest | Total | Paid/Exon | Balance |
|---|---|---|---|---|---|---|
| COUNTY | 563.28 | 56.33 | 83.65 | 703.26 | 703.26 | 0.00 |
| TWP/BORO/CITY | 296.01 | 29.60 | 43.96 | 369.57 | 369.57 | 0.00 |
| LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL | 1,657.36 | 165.74 | 246.12 | 2,069.22 | 2,069.22 | 0.00 |
| SCHOOL LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| *FEES* | | | | 133.00 | 133.00 | 0.00 |

**2005 Total Due:   $0.00**

| Tax Year 2006 | Tax | Penalty | Interest | Total | Paid/Exon | Balance |
|---|---|---|---|---|---|---|
| COUNTY | 595.78 | 59.58 | 88.47 | 743.83 | 743.83 | 0.00 |
| TWP/BORO/CITY | 296.01 | 29.60 | 43.95 | 369.56 | 369.56 | 0.00 |
| LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL | 1,701.89 | 170.19 | 252.73 | 2,124.81 | 2,124.81 | 0.00 |
| SCHOOL LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| *FEES* | | | | 178.00 | 178.00 | 0.00 |

**2006 Total Due:   $0.00**

| Tax Year 2007 | Tax | Penalty | Interest | Total | Paid/Exon | Balance |
|---|---|---|---|---|---|---|
| COUNTY | 595.78 | 59.58 | 88.47 | 743.83 | 743.83 | 0.00 |
| TWP/BORO/CITY | 296.01 | 29.60 | 43.96 | 369.57 | 369.57 | 0.00 |
| LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL | 1,701.89 | 170.19 | 252.73 | 2,124.81 | 2,124.81 | 0.00 |
| SCHOOL LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| *FEES* | | | | 194.00 | 194.00 | 0.00 |

|  | | | | | 2007 Total Due: | **$0.00** |

| **Tax Year 2008** | **Tax** | **Penalty** | **Interest** | **Total** | **Paid/Exon** | **Balance** |
| --- | --- | --- | --- | --- | --- | --- |
| COUNTY | 625.87 | 62.59 | 30.98 | 719.44 | 719.44 | 0.00 |
| TWP/BORO/CITY | 296.01 | 29.60 | 14.65 | 340.26 | 340.26 | 0.00 |
| LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL | 1,628.14 | 162.81 | 80.59 | 1,871.54 | 1,871.54 | 0.00 |
| SCHOOL LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| *FEES* | | | | 99.00 | 99.00 | 0.00 |
|  | | | | | 2008 Total Due: | **$0.00** |

| **Tax Year 2009** | **Tax** | **Penalty** | **Interest** | **Total** | **Paid/Exon** | **Balance** |
| --- | --- | --- | --- | --- | --- | --- |
| COUNTY | 655.96 | 65.60 | 117.31 | 838.87 | 838.87 | 0.00 |
| TWP/BORO/CITY | 296.01 | 29.60 | 52.94 | 378.55 | 378.55 | 0.00 |
| LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL | 1,630.09 | 163.01 | 291.53 | 2,084.63 | 2,084.63 | 0.00 |
| SCHOOL LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| *FEES* | | | | 226.00 | 226.00 | 0.00 |
|  | | | | | 2009 Total Due: | **$0.00** |

| **Tax Year 2010** | **Tax** | **Penalty** | **Interest** | **Total** | **Paid/Exon** | **Balance** |
| --- | --- | --- | --- | --- | --- | --- |
| COUNTY | 728.18 | 72.82 | 111.15 | 912.15 | 912.15 | 0.00 |
| TWP/BORO/CITY | 296.01 | 29.60 | 45.19 | 370.80 | 370.80 | 0.00 |
| LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL | 1,690.13 | 169.01 | 257.98 | 2,117.12 | 2,117.12 | 0.00 |

| | Tax | Penalty | Interest | Total | Paid/Exon | Balance |
|---|---|---|---|---|---|---|
| SCHOOL LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| *FEES* | | | | 230.00 | 230.00 | 0.00 |

**2010 Total Due:  $0.00**

| Tax Year 2011 | Tax | Penalty | Interest | Total | Paid/Exon | Balance |
|---|---|---|---|---|---|---|
| COUNTY | 728.18 | 72.82 | 120.15 | 921.15 | 921.15 | 0.00 |
| TWP/BORO/CITY | 296.01 | 29.60 | 48.84 | 374.45 | 374.45 | 0.00 |
| LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL | 1,721.65 | 172.17 | 284.07 | 2,177.89 | 2,177.89 | 0.00 |
| SCHOOL LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| *FEES* | | | | 241.00 | 241.00 | 0.00 |

**2011 Total Due:  $0.00**

| Tax Year 2012 | Tax | Penalty | Interest | Total | Paid/Exon | Balance |
|---|---|---|---|---|---|---|
| COUNTY | 728.18 | 72.82 | 120.15 | 921.15 | 921.15 | 0.00 |
| TWP/BORO/CITY | 356.19 | 35.62 | 58.77 | 450.58 | 450.58 | 0.00 |
| LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL | 1,722.67 | 172.27 | 284.24 | 2,179.18 | 2,179.18 | 0.00 |
| SCHOOL LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| *FEES* | | | | 244.00 | 244.00 | 0.00 |

**2012 Total Due:  $0.00**

| Tax Year 2013 | Tax | Penalty | Interest | Total | Paid/Exon | Balance |
|---|---|---|---|---|---|---|
| COUNTY | 824.59 | 82.46 | 108.85 | 1,015.90 | 1,015.90 | 0.00 |
| TWP/BORO/CITY | 427.13 | 42.71 | 56.38 | 526.22 | 526.22 | 0.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL | 2,051.13 | 205.11 | 270.75 | 2,526.99 | 2,526.99 | 0.00 |
| SCHOOL LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| *FEES* | | | | 107.00 | 107.00 | 0.00 |

**2013 Total Due:  $0.00**

| Tax Year 2014 | Tax | Penalty | Interest | Total | Paid/Exon | Balance |
|---|---|---|---|---|---|---|
| COUNTY | 824.59 | 82.46 | 27.21 | 934.26 | 934.26 | 0.00 |
| TWP/BORO/CITY | 594.39 | 59.44 | 19.61 | 673.44 | 673.44 | 0.00 |
| LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL | 2,152.40 | 215.24 | 71.03 | 2,438.67 | 2,438.67 | 0.00 |
| SCHOOL LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| *FEES* | | | | 107.00 | 107.00 | 0.00 |

**2014 Total Due:  $0.00**

**Grand Total Due:  $0.00**

# Owner Info

**PARCEL ID:** 33-018-082.0-003.00
**OWNER 1:**    BALZER LEROY J UX KAREN A
**OWNER 2:**
**ADDRESS 1:** 3623 W LAKE RD
**ADDRESS 2:**
**ADDRESS 3:**
**CITY:**    ERIE
**STATE:**    PA
**ZIP 1:**    16505
**ZIP 2:**    3401
**LEGAL 1:**    3623 W LAKE RD 155.46X250.5 IR
**LEGAL 2:**
**LEGAL 3:**

**Address: 3633 W LAKE RD    Owner: BALZER LEROY J UX KAREN A    Parcel: 33018082000200**

| Parcel Profile | |
| --- | --- |
| Address | 3633 \| W \| LAKE \| RD |
| Street Status | PAVED |
| School District | MILLCREEK SCHOOL |
| Acreage | 0.3122 |
| Classification | R |
| Land Use Code | IMP'S ASSESSED SEPERATELY |
| Legal Description | 3633 W LAKE RD 51.82X250.5IR |
| Topo | LEVEL |
| Utility | ALL PUBLIC |
| Zoning | Please contact your municipal zoning officer |
| Deed Book | 521 |
| Deed Page | 1889 |
| 2017 Tax Values | |
| Land Value / Taxable | 21,900 / 21,900.00 |
| Building Value / Taxable | 0 / 0.00 |
| Total Value / Taxable | 21,900 / 21,900.00 |
| Clean & Green | Inactive |
| Homestead Status | Inactive |

Erie County, Pennsylvania    Page 2 of 4
Case 17-10652-TPA   Doc 13   Filed 07/14/17   Entered 07/14/17 11:33:38   Desc Main
Document    Page 63 of 145

| | | | | | | |
|---|---|---|---|---|---|---|
| Farmstead Status | Inactive | | | | | |
| Lerta Amount | 0 | | | | | |
| Lerta Expiration Year | 0 | | | | | |

Other Buildings & Yards
*No OBY Data Found*

Sales History

| Sale Date | From | To | Type | Price | Book / Page | Other Info |
|---|---|---|---|---|---|---|
| 9/30/1997 | SHEARER ROBERT L | BALZER LEROY J UX KAREN A | LAND & BUILDING | 150000 | 521 / 1889 | |
| 4/15/1969 | | | | 0 | 1000 / 0338 | |
| 2/4/1966 | | | | 0 | 0933 / 0318 | |

# Parcel Sketches

*Invalid Parcel Number or No Sketches on File*

# Parcel Images

No images found for this parcel.

# Annual Taxes

**Attention City of Erie Residents**
**Please be advised that due to the recent change in the billing cycle for the City of Erie**
**school taxes, the total for Year 2012 (school tax column) will now include the total amounts**
**for both the 2011-12 AND the 2012-13 tax years.**

| Year | County | City/Township | School | Library | Total |
|------|--------|---------------|--------|---------|-------|
| 2017 | 118.48 | 77.83 | 302.85 | 0 | 499.16 |
| 2016 | 113.00 | 77.83 | 301.76 | 0 | 492.59 |
| 2015 | 107.97 | 77.83 | 297.44 | 0 | 483.24 |
| 2014 | 107.97 | 77.83 | 290.76 | 0 | 476.56 |
| 2013 | 107.97 | 55.93 | 277.47 | 0 | 441.37 |
| 2012 | 108.90 | 53.27 | 267.84 | 0 | 430.01 |
| 2011 | 108.90 | 44.27 | 267.84 | 0 | 421.01 |
| 2010 | 108.90 | 44.27 | 263.34 | 0 | 416.51 |
| 2009 | 98.10 | 44.27 | 254.52 | 0 | 396.89 |
| 2008 | 344.24 | 162.81 | 936.07 | 0 | 1443.12 |
| 2007 | 327.69 | 162.81 | 936.07 | 0 | 1426.57 |
| 2006 | 327.69 | 162.81 | 936.07 | 0 | 1426.57 |
| 2005 | 309.82 | 162.81 | 911.57 | 0 | 1384.20 |
| 2004 | 309.82 | 168.80 | 868.54 | 0 | 1347.16 |
| 2003 | 304.52 | 168.80 | 826.84 | 0 | 1300.16 |

# Delinquent Taxes

| Tax Year 2009 | Tax | Penalty | Interest | Total | Paid/Exon | Balance |
|---------------|-----|---------|----------|-------|-----------|---------|
| COUNTY | 98.10 | 9.81 | 0.00 | 107.91 | 107.91 | 0.00 |
| TWP/BORO/CITY | 44.27 | 4.43 | 0.00 | 48.70 | 48.70 | 0.00 |
| LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| *FEES* | | | | 0.00 | 0.00 | 0.00 |
| | | | | **2009 Total Due:** | | **$0.00** |

| Tax Year 2016 | Tax | Penalty | Interest | Total | Paid/Exon | Balance |
|---------------|-----|---------|----------|-------|-----------|---------|
| COUNTY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| TWP/BORO/CITY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| SCHOOL | 301.76 | 30.18 | 2.49 | 334.43 | 334.43 | 0.00 |
| SCHOOL LIBRARY | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| *FEES* | | | | 38.00 | 38.00 | 0.00 |

**2016 Total Due:**  **$0.00**

**Grand Total Due:**  **$0.00**

# Owner Info

**PARCEL ID:** 33-018-082.0-002.00
**OWNER 1:**   BALZER LEROY J UX KAREN A
**OWNER 2:**
**ADDRESS 1:** 3623 W LAKE RD
**ADDRESS 2:**
**ADDRESS 3:**
**CITY:**       ERIE
**STATE:**      PA
**ZIP 1:**      16505
**ZIP 2:**      3401
**LEGAL 1:**    3633 W LAKE RD 51.82X250.5IR
**LEGAL 2:**
**LEGAL 3:**

031573                                          BK 0521 PG 1889

# WARRANTY DEED

THIS INDENTURE made the _30_ day of  September, in the year of our Lord One Thousand Nine Hundred Ninety-seven (1997).

**BETWEEN  ROBERT L. SHEARER,** unremarried widower, of the Township of Millcreek, County of Erie and State of Pennsylvania, Party of the First Part;

### A N D

**LEROY J. BALZER and KAREN A. BALZER,** his wife, as tenants by the entireties with right of survivorship, of the Township of Millcreek, County of Erie and State of Pennsylvania,  Parties of the Second Part.

**WITNESSETH,** That the said party(ies) of the first part, for and in consideration of the sum **ONE HUNDRED FIFTY THOUSAND and 00/100**--------------------($ 150,000.00)------------------------Dollars, lawful money of the United States, to them in hand paid by the said party(ies) of the second part, at and before the ensealing and delivery of these presents, the receipt and payment whereof is hereby acknowledged, has/have granted, bargained, sold, released and confirmed, and by these presents do/does grant, bargain, sell, release and confirm unto the said party(ies) of the second part, and to his, her, their, its, heirs/successors and assigns, All that certain piece or parcel of land situate in the Township of <u>Millcreek</u>, County of Erie and State of Pennsylvania, being Lot Number Eight (No. 8) in Orth Farm Gardens Subdivision as per plot recorded in Erie County Map Book 2 at pages 178-A and 179-A, subject to any Subdivision Restrictions in force and effect at the present time.

Being the same premises conveyed to Robert L. Shearer and Helenann H. Shearer, his wife, by deed dated April 15, 1969 and recorded the same day in Erie County Deed Book 1000, page 338.

ALSO, All that certain piece or parcel of land, in the aforesaid Township, County and State, being Lots Number Nine (9), Ten (10) and Eleven (11) in Orth Farm Gardens Subdivision as per plot recorded in Erie County Map Book 2 at pages 178-A and 179-A, excepting and reserving therefrom the South-Fifty-five (55) feet of Lots Number Ten (10) and Eleven (11) as conveyed by George K. Boettiger and Margaret S. Boettiger, his wife, by deed recorded in Deed Book 322 at page 445, and having erected thereon a two-story brick dwelling and an unattached two-car garage and being more commonly known as 3623 West Lake Road, Millcreek Township, Erie County, Pennyslvania and bearing Erie County Index No. (33) 18-82-3.

Being the same premises conveyed to Robert L. Shearer and Helenann H. Shearer, his wife, by deed dated August 20, 1965 and recorded the same day in Erie County Deed Book 923, page 110.

Helenann H. Shearer died intestate at Erie, PA on November 21, 1995,  for which see Proof of Death intended to be filed forthwith in the office of the Register of Wills of Erie County, PA.

BK 0521 PG 1890

RECORDER OF DEEDS
97 OCT -1 PM12: 31



RECORDER OF DEEDS
ERIE COUNTY, PA

Erie County - Recorder of Deeds
Instrument Filing

Receipt# 279150

Instr# 1997-031573   10/01/1997   13:17:29
Book# 521 Page# 1889
Remarks: EHKM/BALZER
RT 12:31PM SA

DEED                          13.00
DEED - WRIT                     .50
DEED - RTT STATE             1500.00
MILLCREEK S.D.                750.00
MILLCREEK TWP                 750.00
Check# 32632               $3,013.50
Total Received.......      $3,013.50

BK 0521 PG 1891

The Parties of the First Part have no actual knowledge of any hazardous waste, as defined in Act 1980-97 of the Commonwealth of Pennsylvania, having been or presently being disposed of, on or about the within described property.

**TOGETHER** with all and singular the rights, liberties, privileges, hereditaments, improvements and appurtenances, whatsoever thereto belonging, and the reversions and remainders, rents, issues and profits thereof, and also, all the estate and interest whatsoever of the said party of the first part, in law or equity, of, in, to or out of the same;

**TO HAVE AND TO HOLD** the same, together with the premises hereby granted, or intended so to be, unto the said party of the second part, his, her, their, its, heirs/successors, and assigns, to the use of the said party of the second part, his, her, their, its, heirs/successors, and assigns, forever. And the said party of the first part, his, her, their, its, heirs/successors, executors and administrators, do/does hereby covenant and agree to and with the said party of the second part, his, her, their, its, heirs/successors, and assigns, that the said party of the first part, his, her, their, its, heirs/successors, and assigns, all of the above, together with the above mentioned and described premises, unto the said party of the second part, his, her, their, its, heirs/successors, and assigns, against the said party of the first part and his, her, their, its, heirs/successors, and assigns, and against all and every other person or persons whomsoever lawfully claiming or to claim the same shall and will WARRANT and forever DEFEND by these presents.

**IN WITNESS WHEREOF,** the said party(ies) of the first part has/have hereunto set his/her/their hand(s) and seal(s) the day and year first above written.

SIGNED, SEALED and DELIVERED
in the presence of:

_____     _____ (Seal)

Robert L. Shearer

STATE OF PENNSYLVANIA        :
                             :  SS.
COUNTY OF ERIE               :

On this, the 30th day of September, 1997, before me a Notary Public, the undersigned officer, personally appeared Robert L. Shearer, unremarried widower, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
Title of Officer

NOTARIAL SEAL
CRAIG A. ZONNA, Notary Public
Erie, Erie County, Pennsylvania
My Commission Expires Nov. 29, 1999

I, _____, hereby certify that the residence of the within named

Grantees is: _3623 W. LAKE ROAD ERIE PA 16505_

021041

BK0711PG2132

RECORDATION REQUESTED BY

SKY BANK
831 STATE STREET
ERIE, PA 16505

2000 JUN 28   A 9: 16
RECORDER OF DEEDS
ERIE COUNTY, PA.

WHEN RECORDED MAIL TO:

SKY BANK
PO BOX 40
EAST LIVERPOOL, OH 43920

SEND TAX NOTICES TO:

SPACE ABOVE THIS LINE IS FOR RECORDER'S USE ONLY

# OPEN – END MORTGAGE
## THIS MORTGAGE SECURES FUTURE ADVANCES

THIS MORTGAGE IS DATED JUNE 22, 2000, between KAREN A BALZER and LEROY J BALZER, HUSBAND AND WIFE, whose address is 3623 W LAKE RD, ERIE, PA 16505 (referred to below as "Grantor"); and SKY BANK, whose address is 831 STATE STREET, ERIE, PA 16505 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor grants, bargains, sells, conveys, assigns, transfers, releases, confirms and mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all streets, lanes, alleys, passages, and ways; all easements, rights of way, all liberties, privileges, tenements, hereditaments, and appurtenances thereunto belonging or anywise made appurtenant hereafter, and the reversions and remainders with respect thereto; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, located in ERIE County, Commonwealth of Pennsylvania (the "Real Property"):

### SEE ATTACHED EXHIBIT "A"

The Real Property or its address is commonly known as 3623 W LAKE RD, ERIE, PA 16505. The Real Property tax identification number is (33)18–82–2 & (33)18–92–3.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

DEFINITIONS. The following words shall have the following meanings when used in this Mortgage. Terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

Credit Agreement. The words "Credit Agreement" mean the revolving line of credit agreement dated June 22, 2000, between Lender and Grantor with a credit limit of $63,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the Credit Agreement.

Grantor. The word "Grantor" means KAREN A BALZER and LEROY J BALZER. The Grantor is the mortgagor under this Mortgage.

Guarantor. The word "Guarantor" means and includes without limitation each and all of the guarantors, sureties, and accommodation parties in connection with the Indebtedness.

Indebtedness. The word "Indebtedness" means all principal up to $63,000.00 outstanding under the Note at any time and interest payable under the Credit Agreement and any amounts expended or advanced by Lender to discharge obligations of Grantor or expenses incurred by Lender to enforce obligations of Grantor under this Mortgage, together with interest on such amounts as provided in this Mortgage. Specifically, without limitation, this Mortgage secures a revolving line of credit, which obligates Lender to make advances to Grantor unless Grantor fails to comply with all the terms of the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Grantor and Lender that this Mortgage secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided above and any intermediate balance, plus interest. The unpaid principal balance of advances exclusive of interest and unpaid balances of advances and other extensions of credit, secured by the Mortgage made for the payment of taxes, assessments, maintenance charges, insurance premiums and costs incurred for the protection of the mortgaged premises shall not exceed at any one time $63,000.00. The liens and security interests created pursuant to this Mortgage covering the Indebtedness which may be created in the future shall relate back to the date of this Mortgage.

Personal Property. The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

Property. The word "Property" means collectively the Real Property and the Personal Property.

Real Property. The words "Real Property" mean the property, interests and rights described above in the "Grant of Mortgage" section.

Rents. The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

06-22-2000
Loan No

**MORTGAGE** BK 0 7 1 1 PG 2 1 3 3
**(Continued)**

Page 2

---

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ALL OBLIGATIONS OF GRANTOR UNDER THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due, and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until in default, Grantor may remain in possession and control of and operate and manage the Real Property and collect the Rents.

Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Nuisance, Waste. Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Lender.

**DUE ON SALE – CONSENT BY LENDER.** Lender may, at its option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without the Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest therein; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of Real Property interest. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Pennsylvania law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are a part of this Mortgage.

Payment. Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Mortgage, except for the lien of taxes and assessments not due, and except as otherwise provided in the following paragraph.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage.

Maintenance of Insurance. Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property at any time become located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance for the full unpaid principal balance of the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

Application of Proceeds. Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at its election, apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property.

**EXPENDITURES BY LENDER.** If Grantor fails to comply with any provision of this Mortgage, or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on Grantor's behalf may, but shall not be required to, take any action that Lender deems appropriate. Any amount that Lender expends in so doing will bear interest at the rate provided for in the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the credit line and be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Credit Agreement, or (c) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. This Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of the default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had. Grantor's obligation for all such expenses shall survive the entry of any mortgage foreclosure judgment.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage.

Title. Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

Defense of Title. Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, terminates the credit line account, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**DEFAULT.** Each of the following, at the option of Lender, shall constitute an event of default ("Event of Default") under this Mortgage: (a) Grantor commits fraud or makes a material misrepresentation at any time in connection with the credit line account. This can include, for example, a false statement about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition. (b) Grantor does not meet the repayment terms of the credit line account. (c) Grantor's action or inaction adversely affects the collateral for the credit line account or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a lien on the dwelling without Lender's permission, foreclosure by the

06-22-2000           **MORTGAGE**    BK0711PG2134       **Page 3**
Loan No              **(Continued)**

holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

    **Accelerate Indebtedness.** Subject to applicable law, Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable.

    **UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

    **Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

    **Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by nonjudicial sale.

    **Deficiency Judgment.** Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

    **Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Credit Agreement or available at law or in equity.

    **Attorneys' Fees; Expenses.** In the event of foreclosure of this Mortgage, Lender shall be entitled to recover from Grantor attorneys' fees and actual disbursements necessarily incurred by Lender in pursuing such foreclosure.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

    **Applicable Law.** This Mortgage has been delivered to Lender and accepted by Lender in the Commonwealth of Pennsylvania. This Mortgage shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

    **Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.**

**THIS MORTGAGE HAS BEEN SIGNED AND SEALED BY THE UNDERSIGNED.**

**GRANTOR:**

X _Karen A Balzer_____ (SEAL)      X _Leroy J Balzer_____ (SEAL)
   **KAREN A BALZER**                            **LEROY J BALZER**

Signed, acknowledged and delivered in the presence of:

X _Marilyn M Stran_____
   **Witness**

X _____
   **Witness**

Signed, acknowledged and delivered in the presence of:

X _____
   **Witness**

X _____
   **Witness**

---

## CERTIFICATE OF RESIDENCE

I hereby certify, that the precise address of the mortgagee, SKY BANK, herein is as follows:

831 STATE STREET, ERIE, PA  16505

_Patricia R Stantz_
                      **Attorney or Agent for Mortgagee**

## SCHEDULE "A"

### KAREN BALZER & LEROY J. BALZER

ALL THAT CERTAIN PROPERTY SITUATED IN THE TOWNSHIP OF MILLCREEK, COUNTY OF
ERIE, IN THE COMMONWEALTH OF PENNSYLVANIA, BEING DESCRIBED AS FOLLOWS: WITH
THE ASSESSMENT NUMBER (S) OF (33) 18-82-3 & (33) 18-32-2 AND BEING MORE FULLY
DESCRIBED IN A DEED DATED 9-30-97, AND RECORDED 10-1-97, AMONG THE LAND RECORDS
OF THE COUNTY AND STATE SET FORTH ABOVE, IN DEED BOOK 521, PAGE 1889.

'06-22-2000                    **MORTGAGE**              BK 0 7 1 1 PG 2 1 3 6      **Page 4**
Loan No �NᴄᴏⁿⁿNNNN              (Continued)

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___Pa._____ )
                                    ) SS
COUNTY OF___Erie_____ )

On this, the __22__ day of __June_____, 20__00__, before me __Sandra L. Montgomery_____, the
undersigned Notary Public, personally appeared KAREN A BALZER and LEROY J BALZER, known to me (or satisfactorily proven) to be the person
whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

                                         *Sandra L. Montgomery*
                                         Notary Public in and for the State of ___Pa._____

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.28a (c) 2000 CFI ProServices, Inc. All rights reserved. [PA-G03 F3.28 X0822004.LN L1.OVL]

Notarial Seal
Sandra L. Montgomery, Notary Public
Erie, Erie County
My Commission Expires Mar. 6, 2003
Member, Pennsylvania Association of Notaries

RECORDER OF DEEDS
ERIE COUNTY, PA

031574

RECORDER OF DEEDS

97 OCT -1 PM 12: 33

BK 0521 PG 1892

Parcel Number:    (33) 18-82-53

0008694379

[Space Above This Line For Recording Data]

RETURN TO:
NATIONAL CITY MORTGAGE CO.
3232 NEWMARK DRIVE
MIAMISBURG, OH 45342

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on          **September 30, 1997**          . The mortgagor is
**LEROY J BALZER and KAREN BALZER**
                              **A.**

("Borrower"). This Security Instrument is given to

**National City Bank of Pennsylvania**

which is organized and existing under the laws of    **The United States of America**                , and whose
address is   **116 Allegheny Center Mall, Pittsburgh, Pennsylvania 15212-5356**
                              ("Lender"). Borrower owes Lender the principal sum of
**ONE HUNDRED FIFTEEN THOUSAND & 00/100**

Dollars (U.S. $        **115,000.00** ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on   **October 1, 2027**          . This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of
this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in
                              **Erie**                            County, Pennsylvania:

        **SEE ATTACHED LEGAL - Exhibit "A"**

which has the address of   **3623 WEST LAKE RD, ERIE**                                    [Street, City],
Pennsylvania         **16505**          [Zip Code] ("Property Address");
PENNSYLVANIA - Single Family   - FNMA/FHLMC
        UNIFORM INSTRUMENT      Form 3039 9/90
   ^ 6R(PA) (9410)              Amended 5/91
Page 1 of 6      VMP MORTGAGE FORMS - (800)521-7291
                              Initials: _____

BK0521PG1893

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges.    Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance.    Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments.    Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. Charges; Liens.    Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

Form 3039 9/90

Initials: _KISLB._

BK 0 5 2 1 PG 1 8 9 4

EXHIBIT "A"

**ALL THAT CERTAIN** piece or parcel of land situate in the Township of Millcreek, County of Erie and Commonwealth of Pennsylvania, being Lot Number Eight (No. 8) in Orth Farm Gardens Subdivision as per plot recorded in Erie County Map Book 2 at pages 178-A and 179-A, subject to any Subdivision Restrictions in force and effect at the present time.

Being the same premises conveyed to Mortgagors herein by Deed intended to be recorded herewith.

BK0521PG1895

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

Form 3039 9/90

Initials: _KBXB_

^ ___6R(PA) (9410)                    Page 3 of 6

BK 0 5 2 I PG I 8 9 6

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection.   Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation.    The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. Borrower Not Released; Forbearance By Lender Not a Waiver.    Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Loan Charges.   If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. Notices.  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. Governing Law; Severability.   This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

‸ ‗6R(PA) (0400)                                        Page 4 of 6                                        Form 3039  9/90
Initials: KBX.B.

BK0521PG1897

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by applicable law.**

22. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. **Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

Form 3039  9/90
Initials: KBR.P.

BK0521PG1898

**24. Reinstatement Period.** Borrower's time to reinstate provided in paragraph 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**25. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**26. Interest Rate After Judgment.**     Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ VA Rider | ☒ Other(s) [specify] | |
| | Legal Description | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                                LEROY J. BALZER                -Borrower

_____     _____ (Seal)
                                                KAREN BALZER                   -Borrower
                                                A.

_____ (Seal)     _____ (Seal)
                          -Borrower                                          -Borrower

**Certificate of Residence**

I,   Joseph T. Messina, Esquire                    , do hereby certify that the correct address of the within-named Mortgagee is     116 Allegheny Center Mall, Pittsburgh, PA  15212-5356

Witness my hand this     30th          day of     September          1997

                                                          Agent of Mortgagee

**COMMONWEALTH OF PENNSYLVANIA,**              ERIE                County ss:

On this, the     30th     day of     September A.   ,   1997     , before me, the undersigned officer, personally appeared     Leroy J. Balzer and Karen Balzer, his wife

                                                known to me (or satisfactorily proven) to be the person s   whose names are  subscribed to the within instrument and acknowledged that     they  executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

NOTARIAL SEAL
CRAIG A. ZONNA, Notary Public
Erie, Erie County, Pennsylvania
My Commission Expires Nov. 29, 1699

                          Title of Officer

031575                                              BK0521PG1899

## ASSIGNMENT OF MORTGAGE AND PROMISSORY NOTE

FOR VALUE RECEIVED National City Bank of PA  ,("Bank"), hereby sells, transfers, sets over and assigns to:

National City Mortgage Company
3232 Newark Drive, Miamisburg, PA 45342

its successors and/or assigns, Bank's entire right, title, and interest in and to the following described mortgage ("Mortgage") and promissory note ("Promissory Note") which are dated ___9-30-97___, in the original principal amount of $ 115,000.00 . The Mortgage is described and identified by the following names(s) of the mortgagor(s), instrument number, and/or book and page number as recorded in ___Erie___ County, ___Pennsylvania___ :

| MORTGAGOR(S) | INSTRUMENT NO. | BOOK | PAGE |
|---|---|---|---|
| Leroy J Balzer | | 521 | 1892 |
| Karen Balzer | | | |
| | | | |

IN TESTIMONY WHEREOF, said National City Bank of PA has hereunto set its hand this 30th day of ___September___ ___1997___.

ATTEST:

Type Name: Beth Beegle

By: _Beverly J Whitebaugh_
Name:  Beverly J Washabaugh

Type Name: MARGARET E FRAMPTON Y. PA
Vice President

STATE OF ___Pennsylvania___ )
COUNTY OF ___Allegheny___ ) SS:

RECORDER OF DEEDS

97 OCT -1 PM 12: 34

The foregoing instrument was acknowledged before me this ___30th___ day of ___September___ ___1997___, by ___Beverly J Washabaugh___ as ___Vice President___, on behalf of ___National City Bank of PA___

_Debra A Glabb_
NOTARY PUBLIC
Commission Expiration:

Notarial Seal
Debra A. Glabb, Notary Public
Pittsburgh, Allegheny County
My Commission Expires May 31, 1999
Member, Pennsylvania Association of Notaries

This Instrument Prepared by:
___Carol A Duffy___ (Name)
National City Mtg Company
PO BOX 1820
Dayton, OH 45401-9803
When recorded, mail to Preparer.

21-133

005164                         BK1688PG0789                        869437-9

## PARTIAL RELEASE OF MORTGAGE

    For value received, National City Bank of Pennsylvania
does hereby release from the lien and operation of a certain mortgage,
from Leroy J Balzer and Karen A Balzer to said
National City Bank of Pennsylvania Pittsburgh, PA  15212
recorded in Volume 521, Page 1892, Microfiche No.   ,
of the Mortgage Records of said County, so much of the property therein
described as is known and described as follows, viz:

All the certain piece or parcel of land situated in the Township of
Millcreek, County of Erie and State of Pennsylvania being Lot Numbered
Eight (No.8) in Orth Farm Gardens Subdivision as per plot recorded in
Erie County Map Book 2 at pages 178-A and 179-A, subject to any Subdivisio
Restrictions in force and effect at the present time.

Without, however, invalidating the lien of said mortgage upon the
remainder of the land therein described.

    Signed this day February 10, 2000

Executed in the presence of:             National City Bank of Pennsylvania

_Debbie Haller_
Debbie Haller

_Mary Y. Parrish_
Mary Y. Parrish

                           By: _Crystal A. Carter_
                            Crystal A. Carter
                            Authorized Signer

STATE OF OHIO, COUNTY MONTGOMERY, SS:

    Be it remembered that on this February 10, 2000, before
me, a Notary Public in and for said County, personally came the
above--named of by Crystal A. Carter its Authorized Signer and
acknowledged the signing of the foregoing partial release to be
its and her voluntary act and deed.

                    IN TESTIMONY WHEREOF, I have hereunto
                    subscribed my name and affixed my Notary Seal
                    on the day and year last aforesaid.

                    Notary Public

                    MARY Y. STROUD, Notary Public
                    In and for the State of Ohio
THIS INSTRUMENT PREPARED BY/RETURN TO   My Commission Expires April 11, 2000
NATIONAL CITY MORTGAGE CO.
P.O. BOX 1820
DAYTON, OH  45401-1820
_MARY Y. PARRISH_
MARY Y. PARRISH

                                    CR074 2ZH

Erie County PA Recorder of Deeds Inst # 2015005669 3/27/2015 11:48:27 AM

031574 BK0521PG1892

RECORDER OF DEEDS
ERIE COUNTY, PA

RECORDER OF DEEDS

97 OCT -1 PM 12: 33

BALZER
251403
TM

Parcel Number: (33) 18-82-3

2015005669 Re-Record

0008694379

[Space Above This Line For Recording Data]

**RETURN TO:**
NATIONAL CITY MORTGAGE CO.
3232 NEWMARK DRIVE
MIAMISBURG, OH 45342

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **September 30, 1997**. The mortgagor is
**LEROY J BALZER and KAREN BALZER A.**

("Borrower"). This Security Instrument is given to

**National City Bank of Pennsylvania**

which is organized and existing under the laws of **The United States of America**, and whose
address is **116 Allegheny Center Mall, Pittsburgh, Pennsylvania 15212-5356**
("Lender"). Borrower owes Lender the principal sum of
**ONE HUNDRED FIFTEEN THOUSAND & 00/100**

Dollars (U.S. $ **115,000.00** ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on **October 1, 2027**. This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of
this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in
**Erie** County, Pennsylvania:

**SEE ATTACHED LEGAL - Exhibit "A"**

which has the address of **3623 WEST LAKE RD, ERIE** [Street, City],
Pennsylvania **16505** [Zip Code] ("Property Address");

PENNSYLVANIA - Single Family - FNMA/FHLMC
UNIFORM INSTRUMENT Form 3039 9/90
6R(PA) (9410) Amended 5/91
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 6 Initials: KB LB

Erie County PA Recorder of Deeds   Document #: 2015300988   3/27/2015 11:48:27 AM
BK 0521 PG 1893

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

: BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage-insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

Form 3039   9/90
Initials: _KBLD._

Erie County PA Recorder of Deeds    Inst # 2015-005969 - 3/27/2015 11:48:27 AM
BK 0521 PG 1894

## EXHIBIT "A"

**ALL THAT CERTAIN** piece or parcel of land situate in the Township of Millcreek, County of Erie and Commonwealth of Pennsylvania, being Lot Number Eight (No. 8) in Orth Farm Gardens Subdivision as per plot recorded in Erie County Map Book 2 at pages 178-A and 179-A, subject to any Subdivision Restrictions in force and effect at the present time.

Being the same premises conveyed to Mortgagors herein by Deed intended to be recorded herewith.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by applicable law.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**23. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

Form 3039  9/90
Initials: _KBZB_

**24. Reinstatement Period.** Borrower's time to reinstate provided in paragraph 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**25. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**26. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**27. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ VA Rider | ☒ Other(s) [specify] | |

Legal Description

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
LEROY J/ BALZER                    -Borrower

_____ (Seal)
KAREN A. BALZER                    -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

**Certificate of Residence**

I, Joseph T. Messina, Esquire _____, do hereby certify that the correct address of the within-named Mortgagee is 116 Allegheny Center Mall, Pittsburgh, PA 15212-5356

Witness my hand this 30th day of September 1997

_____
Agent of Mortgagee

**COMMONWEALTH OF PENNSYLVANIA,**      ERIE      **County ss:**

On this, the 30th day of September A. , 1997 , before me, the undersigned officer, personally appeared Leroy J. Balzer and Karen Balzer, his wife

known to me (or satisfactorily proven) to be the person s whose names are subscribed to the within instrument and acknowledged that they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires:

NOTARIAL SEAL
CRAIG A. ZONNA, Notary Public
Erie, Erie County, Pennsylvania
My Commission Expires Nov. 29, 1999

_____
Title of Officer

...36R(PA) (9410)

Form 3039 9/90

## RE-AFFIRMATION, RE-EXECUTION AND RE-ACKNOWLEDGEMENT OF
## PREVIOUSLY RECORDED DEED OF TRUST

Prepared by Stephen Z. Smalley
When Recorded Mail to:
PNC Mortgage, a Division of PNC Bank, NA
3232 Newmark Drive
Mail Stop: B6-YM13-01-1
Miamisburg, OH 45342                                    Loan Number 0008694379

The undersigned hereby reaffirms and re-acknowledges the terms and conditions of that certain
Mortgage recorded on 10/1/1997 in Doc # 031574 Book 0521, Page 892-898, Erie County, by and
between Leroy J Balzer and Karen A. Balzer (Grantor), PNC Bank, National Association, successor by
merger to National City Bank, successor by merger to National City Bank of Pennsylvania (Lender)
(original parties), which terms and conditions are incorporated herein by reference as if fully set forth.

The undersigned hereby acknowledges that the purpose for the recording of this re-affirmation, re-
execution and re-acknowledgment of said instrument is:
The Mortgage was recorded with the incorrect legal. Re-Recording with the corrected legal.

To the extent not inconsistent herewith, the undersigned hereby ratifies and reaffirms the terms,
conditions and conveyances contained in the above-referenced instrument incorporated herein by
reference.
IN WITNESS WHEREOF, the undersigned has duly executed this instrument, this the ___ day of March,
2015

Joni Mays, Assistant Vice President

CORPORATE ACKNOWLEDGEMENT

BEFORE ME Elizabeth C Houk, a Notary Public in and for said County and State, personally
appeared Joni Mays, Assistant Vice President of PNC Bank , National Association, successor by merger
to National City Bank, successor by merger to National City Bank of Pennsylvania, who acknowledged
that he did sign the foregoing instrument and that the same is the free act and deed of said corporation
and his free act and deed personally and as such officer.

IN WITNESS WHEREOF, I have hereunto set my hand, this ___ day of March, 2015.

Elizabeth C Houk
Notary Public, State of Ohio
My commission expires 3/2/2019
Warren County

*LEGAL DESCRIPTION*

**LOAN POLICY**
**SCHEDULE A**

Reference No.:_____

| Number | Amount of Insurance | Date of Policy |
|---|---|---|
| **Owners  OP NO. 75209** | $ 150,000.00 | October 1, 1997 |
| **Lenders LP NO. 75209** | $ 115,000.00 | October 1, 1997 |

1. **Name of Insured:** National City Bank of Pennsylvania, its successors and assigns, as their interests may appear

2. **The estate or interest referred to herein is at Date of Policy vested in:**

   Karen A. Balzer and Leroy J. Balzer, husband and wife

3. **The estate or interest in the land described in this Schedule and which is encumbered by the insured mortgage is:**

   Fee Simple

4. **The mortgage, herein referred to as the insured mortgage, and the assignments thereof, if any, are described as follows:**

   Mortgage given by Karen A. Balzer and Leroy Balzer, husband and wife to National City Bank of Pennsylvania by document dated _____ and recorded _____ in the Office of the Recorder of Deeds for Erie County, Pennsylvania in Record Book _____, page _____, to secure the payment of a note in the amount of $115,000.00

5. **The land referred to in this policy is located in the County of** Erie, **Township of Millcreek, State of Pennsylvania, and described as follows:**

   Being Lots Number Nine (9), Ten (10) and Eleven (11) of Orth Farm Gardens Subdivision as per plot recorded in Erie County Map Book 2 at pages 178-A and 179-A, excepting and reserving therefrom the South Fifty-five (55) feet of Lots Number Ten (10) and Eleven (11) as conveyed by George W. Boettiger and Margaret B. Boettiger, his wife, by deed recorded in Deed Book 321, page 445.

   Being further identified as Tax Parcel Index No. (33) 18-82-3 as shown on the assessment map in the records for Erie County, Pennsylvania.

   **This policy valid only if Schedule B is attached.**



# RECORDER OF DEEDS DIVISION

ERIE COUNTY COURTHOUSE 140 W. 6TH STREET, ERIE, PA 16501
Mailing Address: P.O. Box 1849, Erie, Pennsylvania 16512
PHONE: (814) 451-6246  FAX: (814) 451-6213
EMAIL: recorder@eriecountygov.org

2015-005669

**KENNETH J. GAMBLE**
Erie County Clerk Of Records

| | |
|---|---|
| Instrument Number: 2015-005669 | Record Date:  3/27/2015 |
| Instrument Type:  MORTGAGE | Record Time:  11:48:27 |
| | Receipt No.:  1099409 |

---                  ---

## Receipt Distribution

| Fee/Tax Description | Payment Amount |
|---|---|
| MORTGAGE | 21.00 |
| MORTGAGE-WRIT | .50 |
| LOW INCOME HOUSING | 10.50 |
| J.C.S. / A.T.J | 35.50 |
| CO REC MGT ACCT | 2.00 |
| ROD REC MGT ACCT | 3.00 |
| | ---------------- |
| Check# 1594 | $72.50 |
| Total Received........ | $72.50 |

Recording Page Count:  10

Paid By Remarks: PNC MORTGAGE/BALZER
AP

I HEREBY **CERTIFY** THAT THIS DOCUMENT
IS RECORDED IN THE RECORDER OF DEEDS
OFFICE OF ERIE COUNTY, PENNSYLVANIA

KENNETH J. GAMBLE
ERIE COUNTY CLERK OF RECORDS

Certification Page
## DO NOT DETACH
This page is now part of this legal document.

NOTE:  Some information subject to change during the verification process and may not be reflected on this page.

2017011047

This Document Prepared By:
JARAD DOUGLAS
PNC MORTGAGE, A DIVISION OF
PNC BANK, NATIONAL
ASSOCIATION
3232 NEWMARK DR
MIAMISBURG, OH 45342
(888) 224-4702

When Recorded Mail To:
PNC BANK, N.A.
P.O. BOX 8800
DAYTON, OH 45401

Tax/Parcel #: 330180820003000

_____ [Space Above This Line for Recording Data] _____

Original Principal Amount: $115,000.00          Fannie Mae Loan No.: ▮▮▮▮
Unpaid Principal Amount: $71,909.04             Loan No: ▮▮▮▮
New Principal Amount: $86,095.99
Capitalization Amount: $14,186.95

# LOAN MODIFICATION AGREEMENT (MORTGAGE)
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 16TH day of FEBRUARY, 2017, between LEROY J. BALZER AND KAREN A. BALZER ("Borrower") whose address is 3623 WEST LAKE RD, ERIE, PENNSYLVANIA 16505 and PNC BANK, NATIONAL ASSOCIATION, SUCCESSOR IN INTEREST TO NATIONAL CITY REAL ESTATE SERVICES, LLC, SUCCESSOR BY MERGER TO NATIONAL CITY MORTGAGE, INC., FORMERLY KNOWN AS NATIONAL CITY MORTGAGE CO. ("Lender"), whose address is 3232 NEWMARK DR, MIAMISBURG, OH 45342, amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated SEPTEMBER 30, 1997 and recorded on OCTOBER 1, 1997 in INSTRUMENT NO. 031574 BOOK 521 PAGE 1892 AND RE-RECORDED ON MARCH 27, 2015 IN INSTRUMENT NO. 2015-005669, of the OFFICIAL Records of ERIE COUNTY, PENNSYLVANIA, and (2) the Note bearing the same date as,

LOAN MODIFICATION AGREEMENT - Single Family-- Fannie Mae Uniform
Instrument Form 3179 (fixed) / 3162 (step) (rev. 01/09) 12152016_87          0008694379
Page 1

and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

### 3623 WEST LAKE RD, ERIE, PENNSYLVANIA 16505
(Property Address)

the real property described being set forth as follows:

The land referred to in this document is situated in the STATE OF PENNSYLVANIA, COUNTY OF ERIE, CITY OF ERIE, and described as follows:

SEE ATTACHED EXHIBIT A

SEE ATTACHED EXHIBIT "B" FOR MORTGAGE SCHEDULE

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of, MARCH 1, 2017, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $86,095.99, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 7.2500% from MARCH 1, 2017. Borrower promises to pay monthly payments of principal and interest of U.S. $550.73 beginning on the 1ST day of APRIL, 2017 and continue. The yearly rate of 7.2500% will remain in effect until the principal and interest are paid in full. If on MARCH 1, 2057 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date .

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

3623 W LAKE RD

Loan #
Order #
Name  LEROY J BALZER



Loan# 0008694379

# Exhibit A

## Legal Description

ALL THAT CERTAIN PIECE OR PARCEL OF LAND SITUATE IN THE CITY OF ERIE,
TOWNSHIP OF MILLCREEK, COUNTY OF ERIE AND STATE OF PENNSYLVANIA.

ALSO, ALL THAT CERTAIN PIECE OR PARCEL OF LAND, IN THE AFORESAID
TOWNSHIP, COUNTY AND STATE, BEING LOTS NUMBER NINE (9), TEN (10) AND
ELEVEN (11) IN ORTH FARM GARDENS SUBDIVISION AS PER PLOT RECORDED IN
ERIE COUNTY MAP BOOK 2 AT PAGES 178-A AND 179-A, EXCEPTING AND
RESERVING THEREFROM THE SOUTH-FIFTY-FIVE (55) FEET OF LOTS NUMBER TEN
(10) AND ELEVEN (11)

PARCEL ID NO: 330180820003000

FOR INFORMATIONAL PURPOSES ONLY, PROPERTY ALSO KNOWN AS:
3623 W LAKE RD,
ERIE, PA 16505-3401

(a)     all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note

(b)     all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.   Borrower understands and agrees that:

(a)     All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)     All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)     All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)     Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)     Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument Form 3179 (fixed) / 3162 (step) (rev. 01/09)      Page 3

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging ☐.

6: **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

7. By this paragraph, **Lender is notifying Borrower** that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

8. **Important Information about phone calls, texts, prerecorded and email messages:** If, at any time, you provide to PNC, its affiliates or designees contact numbers that are wireless telephone number(s) including, but not limited to, cell or VoIP numbers, you are consenting to PNC, its affiliates and designees using an automated dialing system to call or text you, or to send prerecorded messages to you, in order to service, and collect on, any personal account(s) and business account(s) (for which you are an authorized signer or designated contact person) with PNC and/or its affiliates, but not to market to you. For any type of phone call with PNC, its affiliates or designees, you consent that the call may be monitored or recorded for quality control and training purposes. By providing your email address, you consent to receive electronic mail from PNC, its affiliates and designees.

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform
Instrument Form 3179 (fixed) / 3162 (step) (rev. 01/09)
Page 5

In Witness Whereof, I have executed this Agreement.

Borrower: **LEROY J. BALZER**

_____   Date   5 - 11 - 17

Borrower: **KAREN A. BALZER**

_____   Date   5-11-17

Borrower: _____   Date _____

Borrower: _____   Date _____

[Space Below This Line for Acknowledgments]

## BORROWER ACKNOWLEDGMENT

**STATE OF PENNSYLVANIA**
**COUNTY OF** Erie

On this, the 11 day of May, 2017, before me DONNA J. Geniesse, the undersigned officer, personally appeared **LEROY J. BALZER, KAREN A. BALZER**, known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that (he/she/they) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal

_____
Notary Public

Printed Name: DONNA J. Geniesse

My Commission expires:
April 23, 2019

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Donna J. Geniesse, Notary Public
City of Erie, Erie County
My Commission Expires April 23, 2019

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform
Instrument Form 3179 (fixed) / 3162 (step) (rev. 01/09)
Page 6

In Witness Whereof, the Lender have executed this Agreement.

PNC BANK, NATIONAL ASSOCIATION, SUCCESSOR IN INTEREST TO NATIONAL CITY REAL
ESTATE SERVICES, LLC, SUCCESSOR BY MERGER TO NATIONAL CITY MORTGAGE, INC.,
FORMERLY KNOWN AS NATIONAL CITY MORTGAGE CO.

By AMBER JOHNSTON                        (print name)                    5-18-17
   Mortgage Officer                      (title)                         Date
                                   [Space Below This Line for Acknowledgments]

LENDER ACKNOWLEDGMENT

State of _Ohio_

County of _Montgomery_

The foregoing instrument was acknowledged before me this ____ 5-18-17 _____

(date) by AMBER JOHNSTON, the MORTGAGE OFFICER of PNC BANK, NATIONAL

ASSOCIATION, SUCCESSOR IN INTEREST TO NATIONAL CITY REAL ESTATE SERVICES,

LLC, SUCCESSOR BY MERGER TO NATIONAL CITY MORTGAGE, INC., FORMERLY KNOWN

AS NATIONAL CITY MORTGAGE CO., a _____ corporation,

on behalf of the _____ corporation.


Notary Public

SHARITA WISE
NOTARY PUBLIC
STATE OF OHIO
RECORDED IN
MONTGOMERY COUNTY
My Commission Expires
September 30, 2020

Printed Name: _Sharita Wise_

My commission expires: _9-30-2020_

PNC MORTGAGE, A DIVISION OF PNC BANK, NATIONAL ASSOCIATION
3232 NEWMARK DR
MIAMISBURG, OH 45342

**EXHIBIT B**
**MORTGAGE SCHEDULE**

Mortgage made by **LEROY J. BALZER AND KAREN A. BALZER** to **NATIONAL CITY BANK OF PENNSYLVANIA** for $115,000.00 and interest, dated **SEPTEMBER 30, 1997** and recorded on **OCTOBER 1, 1997** in **INSTRUMENT NO. 031574  BOOK 521  PAGE 1892  AND RE-RECORDED ON MARCH 27, 2015 IN INSTRUMENT NO. 2015-005669.**

This mortgage was assigned from **NATIONAL CITY BANK, PENNSYLVANIA** (assignor), to **NATIONAL CITY MORTGAGE CO.** (assignee), by assignment of mortgage dated **SEPTEMBER 30, 1997** and recorded on **OCTOBER 1, 1997** in **INSTRUMENT NO. 031575 BOOK 521 PAGE 1899.**

# CERTIFICATE OF RESIDENCE

## TITLE OF DOCUMENT
**LOAN MODIFICATION AGREEMENT**

## BETWEEN:
**LEROY J. BALZER, KAREN A. BALZER** (assignor/Mortgagor/grantor)

## AND:
**PNC BANK, NATIONAL ASSOCIATION, SUCCESSOR IN INTEREST TO NATIONAL CITY REAL
ESTATE SERVICES, LLC, SUCCESSOR BY MERGER TO NATIONAL CITY MORTGAGE, INC.,
FORMERLY KNOWN AS NATIONAL CITY MORTGAGE CO.** (assignee/Mortgagee/grantee)


I do hereby certify that the precise address of the within named Mortgagee is:
**PNC BANK, NATIONAL ASSOCIATION, SUCCESSOR IN INTEREST TO NATIONAL CITY REAL
ESTATE SERVICES, LLC, SUCCESSOR BY MERGER TO NATIONAL CITY MORTGAGE, INC.,
FORMERLY KNOWN AS NATIONAL CITY MORTGAGE CO.
3232 NEWMARK DR
MIAMISBURG, OH 45342**


By: _Bonnie Morris_

Print Name: _Bonnie Morris_

Title: _Loan Analyst Sr_



# RECORDER OF DEEDS DIVISION

### ERIE COUNTY COURTHOUSE
140 W. 6TH STREET, ROOM 121, ERIE, PA 16501
PHONE: (814) 451-6246   FAX: (814) 451-6213
EMAIL: recorder@eriecountypa.gov

**KENNETH J. GAMBLE**
Erie County Clerk Of Records

2017-011047

| | |
|---|---|
| Instrument Number: **2017-011047** | |

Instrument Type: **MORTGAGE MOD/AMEND**

Record Date:  **5/31/2017**
Record Time:  **10:55:38**
Receipt No.:  **1167110**

## Receipt Distribution

| Fee/Tax Description | Payment Amount |
|---|---|
| MORTGAGE MOD/AMEND | 25.00 |
| MORTG MOD/AMEND-WR | .50 |
| CO REC MGT ACCT | 2.00 |
| ROD REC MGT ACCT | 3.00 |
| Check# 2035 | $30.50 |
| Total Received......... | $30.50 |

Recording Page Count:  11

Paid By Remarks: PNC MORTGAGE/BALZER
JT

I HEREBY **CERTIFY** THAT THIS DOCUMENT
IS RECORDED IN THE RECORDER OF DEEDS
OFFICE OF ERIE COUNTY, PENNSYLVANIA

**KENNETH J. GAMBLE**
ERIE COUNTY CLERK OF RECORDS

Certification Page
## DO NOT DETACH
This page is now part of this legal document.

**NOTE:** Some information subject to change during the verification process and may not be reflected on this page.



# NADAguides Price Report
### 6/26/2017

# 2007 Jeep PATRIOT-4 Cyl.-4WD

Utility 4D Sport 4WD

# Values

|  | Rough Trade-In | Average Trade-In | Clean Trade-In | Clean Retail |
|---|---|---|---|---|
| **Base Price** | $2,150 | $2,950 | $3,600 | $5,675 |
| **Mileage (49,000)** | $1,800 | $1,800 | $1,800 | $1,800 |
| **Total Base Price** | $3,950 | $4,750 | $5,400 | $7,475 |
| **Options:** | | | | |
| **Price with Options** | $3,950 | $4,750 | $5,400 | $7,475 |

**Rough Trade-In** - Rough Trade-In values reflect a vehicle in rough condition. Meaning a vehicle with significant mechanical defects requiring repairs in order to restore reasonable running condition. Paint, body and wheel surfaces have considerable damage to their finish, which may include dull or faded (oxidized) paint, small to medium size dents, frame damage, rust or obvious signs of previous repairs. Interior reflects above average wear with inoperable equipment, damaged or missing trim and heavily soiled /permanent imperfections on the headliner, carpet, and upholstery. Vehicle may have a branded title and un-true mileage. Vehicle will need substantial reconditioning and repair to be made ready for resale. Some existing issues may be difficult to restore. Because individual vehicle condition varies greatly, users of NADAguides.com may need to make independent adjustments for actual vehicle condition.

**Average Trade-In** - The Average Trade-In values on nadaguides.com are meant to reflect a vehicle in average condition. A vehicle that is mechanically sound but may require some repairs/servicing to pass all necessary inspections; Paint, body and wheel surfaces have moderate imperfections and an average finish and shine which can be improved with restorative repair; Interior reflects some soiling and wear in relation to vehicle age, with all equipment operable or requiring minimal effort to make operable; Clean title history; Vehicle will need a fair degree of reconditioning to be made ready for resale. Because individual vehicle condition varies greatly, users of nadaguides.com may need to make independent adjustments for actual vehicle condition.

**Clean Trade-In** - Clean Trade-In values reflect a vehicle in clean condition. This means a vehicle with no mechanical defects and passes all necessary inspections with ease. Paint, body and wheels have minor surface scratching with a high gloss finish and shine. Interior reflects minimal soiling and wear with all equipment in complete working order. Vehicle has a clean title history. Because individual vehicle condition varies greatly, users of NADAguides.com may need to make independent adjustments for actual vehicle condition.

**Clean Retail** - Clean Retail values reflect a vehicle in clean condition. This means a vehicle with no mechanical defects and passes all necessary inspections with ease. Paint, body and wheels have minor surface scratching with a high gloss finish and shine. Interior reflects minimal soiling and wear with all equipment in complete working order. Vehicle has a clean title history. Because individual vehicle condition varies greatly, users of NADAguides.com may need to make independent adjustments for actual vehicle condition. Note: Vehicles with low mileage that are in exceptionally good condition and/or include a manufacturer certification can be worth a significantly higher value than the Clean Retail price shown.

© Copyright 2017 National Appraisal Guides, Inc., all rights reserved. National Appraisal Guides, Inc. is a strategic ally of J.D. Power and Associates. © J.D. Power and Associates 2017, all rights reserved.

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | *Leroy John Balzer* |
| | First Name   Middle Name   Last Name |
| Debtor 2 | *Karen Ann Balzer* |
| (Spouse if, filing) | First Name   Middle Name   Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number | *17-10652 TPA* |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106C
# Schedule C: The Property You Claim as Exempt 4/16

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

### Part 1:   Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☐ You are claiming state and federal nonbankruptcy exemptions.   11 U.S.C. § 522(b)(3)

   ☑ You are claiming federal exemptions.   11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| *3623 West Lake Road Erie, PA 16505 Erie County*<br>*In addition to the Mortgages in favor of PNC Bank, N.A. and Huntington National Bank, a total of $22,571.21 in state and federal tax liens act as liens on this real estate and all other real estate owned by*<br>Line from *Schedule A/B*: **1.1** | $189,000.00 | ☑ $34,290.04<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(1)* |
| *706 Linden Avenue Erie, PA 16505 Erie County*<br>*In addition to the Mortgage in favor of DiTech Financial, LLC a total of $22,571.21 in state and federal tax liens act as liens on this real estate and all other real estate owned by the Debtors.*<br>Line from *Schedule A/B*: **1.2** | $85,000.00 | ☑ $13,059.96<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(1)* |
| *2007 Jeep Patriot 49,000 miles*<br>Line from *Schedule A/B*: **3.1** | $4,750.00 | ☑ $4,750.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(2)* |

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                                          Best Case Bankruptcy

Debtor 1   **Leroy John Balzer**
Debtor 2   **Karen Ann Balzer**

Case number (if known)   **17-10652 TPA**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **1997 Chevrolet One Ton Pick-Up 214,868 miles**<br>Line from *Schedule A/B*: **3.2** | $1,200.00 | ■  $1,200.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(2)* |
| **Usual and Ordinary Household Goods and Furnishings**<br>Line from *Schedule A/B*: **6.1** | $2,700.00 | ■  $2,700.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(3)* |
| **Usual and Ordinary Electronics**<br>Line from *Schedule A/B*: **7.1** | $400.00 | ■  $400.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(3)* |
| **2 Mossburg Shotguns**<br>Line from *Schedule A/B*: **10.1** | $200.00 | ■  $200.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(5)* |
| **Usual and Ordinary Wearing Apparel**<br>Line from *Schedule A/B*: **11.1** | $300.00 | ■  $300.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(3)* |
| **2 Cats**<br>Line from *Schedule A/B*: **13.1** | $1.00 | ■  $1.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(3)* |
| **Cash**<br>Line from *Schedule A/B*: **16.1** | $48.00 | ■  $48.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(5)* |
| **Checking: Wife's Checking Account @ Northwest Savings Bank**<br>Line from *Schedule A/B*: **17.1** | $100.00 | ■  $100.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(5)* |
| **Checking: Husband's Checking Account @ Key Bank**<br>Line from *Schedule A/B*: **17.2** | $46.00 | ■  $46.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(5)* |
| **Hand Tools $1,000.00**<br>Line from *Schedule A/B*: **35.1** | $1,000.00 | ■  $1,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(6)* |

3.  **Are you claiming a homestead exemption of more than $160,375?**
(Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.)

■ No

☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

    ☐ No

    ☐ Yes

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | *Leroy John Balzer* |
| | First Name        Middle Name        Last Name |
| Debtor 2 | *Karen Ann Balzer* |
| (Spouse if, filing) | First Name        Middle Name        Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number | *17-10652 TPA* |
| (if known) | |

☐ Check if this is an
    amended filing

## Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property         12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A | Column B | Column C |
|---|---|---|---|---|
| | | Amount of claim | Value of collateral | Unsecured portion |
| | | Do not deduct the value of collateral. | that supports this claim | If any |

| | | | | | |
|---|---|---|---|---|---|
| **2.1** | *Ditech Financial LLC/Greentree Servicing* | **Describe the property that secures the claim:** | *$57,420.00* | *$85,000.00* | *$0.00* |

**2.1** *Ditech Financial LLC/Greentree Servicing*

Creditor's Name

**Describe the property that secures the claim:**

*706 Linden Avenue Erie, PA 16505
Erie County; ARREARS OF
$8,743.42
ASSESSED AT $93,100.00*

*$57,420.00*    *$85,000.00*    *$0.00*

*3000 Bayport Drive
Suite 880
Tampa, FL 33607*

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred _____        Last 4 digits of account number _____

---

**2.2** *Internal Revenue Service*

Creditor's Name

*ATTN: Centralized
Insolvency Operations
P.O. Box 7346
Philadelphia, PA
19101-7346*

Number, Street, City, State & Zip Code

**Describe the property that secures the claim:**

*All real estate owned by the
Debtors.*

*$6,578.73*    *$0.00*    *$0.00*

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

| Debtor 1 | **Leroy John Balzer** | | | Case number (if know) | **17-10652 TPA** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |
| Debtor 2 | **Karen Ann Balzer** | | | | |
| | First Name | Middle Name | Last Name | | |

☐ Check if this claim relates to a     ■ Other (including a right to offset)   *2007 Federal Income Tax Lien (2009-31149)*
    community debt

Date debt was incurred _____     Last 4 digits of account number _____

---

| 2.3 | **Internal Revenue Service** | Describe the property that secures the claim: | **$6,872.58** | *$0.00* | *$0.00* |
|---|---|---|---|---|---|

    Creditor's Name

**ATTN: Centralized
Insolvency Operations
P.O. Box 7346
Philadelphia, PA
19101-7346**

*All real estate owned by the
Debtors.*

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
    community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured
    car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   *2008 Federal Income Tax Lien (2010-32242)*

Date debt was incurred _____     Last 4 digits of account number _____

---

| 2.4 | **Pa. Dept. of Revenue** | Describe the property that secures the claim: | **$3,473.84** | *$0.00* | *$0.00* |
|---|---|---|---|---|---|

    Creditor's Name

**Dept. 280946
Harrisburg, PA
17128-0946**

*All real estate owned by Debtors.*

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
    community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured
    car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   *2007 Personal Income Tax Lien (2012-30489)*

Date debt was incurred _____     Last 4 digits of account number _____

---

| 2.5 | **Pa. Dept. of Revenue** | Describe the property that secures the claim: | **$3,047.47** | *$0.00* | *$0.00* |
|---|---|---|---|---|---|

    Creditor's Name

**Dept. 280946
Harrisburg, PA
17128-0946**

*All real estate owned by Debtors*

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured
    car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit

---

Official Form 106D     Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**     *page 2 of 5*

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com

| Debtor 1 | **Leroy John Balzer** | | Case number (if know) | **17-10652 TPA** |
|---|---|---|---|---|
| | First Name   Middle Name   Last Name | | | |
| Debtor 2 | **Karen Ann Balzer** | | | |
| | First Name   Middle Name   Last Name | | | |

☐ Check if this claim relates to a community debt   ■ Other (including a right to offset) **2010 Personal Income Tax Lien (2014-30413)**

| Date debt was incurred _____ | Last 4 digits of account number _____ |
|---|---|

---

| 2.6 | **Pa. Dept. of Revenue** | Describe the property that secures the claim: | **$1,246.58** | **$0.00** | **$0.00** |
|---|---|---|---|---|---|

Creditor's Name

**Dept. 280946
Harrisburg, PA
17128-0946**

*Number, Street, City, State & Zip Code*

**Describe the property that secures the claim:**

**All real estate owned by the Debtors.**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset) **2011 Personal Income Tax Lien (2015-30740)**

| Date debt was incurred _____ | Last 4 digits of account number _____ |
|---|---|

---

| 2.7 | **Pa. Dept. of Revenue** | Describe the property that secures the claim: | **$1,352.01** | **$0.00** | **$0.00** |
|---|---|---|---|---|---|

Creditor's Name

**Dept. 280946
Harrisburg, PA
17128-0946**

*Number, Street, City, State & Zip Code*

**Describe the property that secures the claim:**

**All real estate owned by the Debtors.**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset) **2012 Personal Income Tax Lien (2016-31061)**

| Date debt was incurred _____ | Last 4 digits of account number _____ |
|---|---|

---

| 2.8 | **PNC Bank** | Describe the property that secures the claim: | **$87,420.00** | **$189,000.00** | **$0.00** |
|---|---|---|---|---|---|

Creditor's Name

**2730 Liberty Avenue
Pittsburgh, PA 15222**

*Number, Street, City, State & Zip Code*

**Describe the property that secures the claim:**

**Second Mortgage on 3623 West Lake Road Erie, PA 16505  Erie County; ARREARS OF $3,112.74 AS OF JUNE 2, 2017**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
■ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Nature of lien.** Check all that apply.
■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit

---

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

Debtor 1 **Leroy John Balzer**

First Name            Middle Name            Last Name          Case number (if know)   **17-10652 TPA**

Debtor 2 **Karen Ann Balzer**

First Name            Middle Name            Last Name

☐ **Check if this claim relates to a**     ☐ Other (including a right to offset) _____
    **community debt**

Date debt was incurred _____ Last 4 digits of account number _____

---

| 2.9 | **The Huntington National Bank** | | | $67,289.96 | $189,000.00 | $0.00 |

Creditor's Name

**c/of McCabe Weisberg &**
**Conway P.C.**
**123 South Broad Street**
**Suite 1400**
**Philadelphia, PA 19109**

Number, Street, City, State & Zip Code

**Describe the property that secures the claim:**

> **First Mortgage on 3623 AND 3633 West Lake Road Erie, PA 16505  Erie County; PAST DUE ON CREDIT REPORT OF $9,858.00**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.
■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred _____ Last 4 digits of account number **4272**

---

| Add the dollar value of your entries in Column A on this page. Write that number here: | $234,701.17 |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $234,701.17 |

---

**Part 2:**    **List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

☐ Name, Number, Street, City, State & Zip Code
    **Bank of America**
    **13150 Worldgate Drive**
    **Herdon, VA 20170**

On which line in Part 1 did you enter the creditor?   **2.1**

Last 4 digits of account number ___

☐ Name, Number, Street, City, State & Zip Code
    **Bank of America**
    **450 East Boundry Street**
    **Chapin, SC 29036**

On which line in Part 1 did you enter the creditor?   **2.1**

Last 4 digits of account number ___

☐ Name, Number, Street, City, State & Zip Code
    **Core Logic**
    **One Core Logic Drive**
    **Westlake, TX 76262**

On which line in Part 1 did you enter the creditor?   **2.1**

Last 4 digits of account number ___

☐ Name, Number, Street, City, State & Zip Code
    **Countrywide Home Loans, Inc.**
    **4500 Park Granada**
    **Calabasas, CA 91302**

On which line in Part 1 did you enter the creditor?   **2.1**

Last 4 digits of account number ___

---

Official Form 106D        Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**        page 4 of 5

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com

| Debtor 1 | **Leroy John Balzer** | | | Case number (if know) | **17-10652 TPA** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |
| Debtor 2 | **Karen Ann Balzer** | | | | |
| | First Name | Middle Name | Last Name | | |

☐ Name, Number, Street, City, State & Zip Code
**Countrywide Home Loans, Inc.**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**

On which line in Part 1 did you enter the creditor? __**2.1**__

Last 4 digits of account number ___

---

☐ Name, Number, Street, City, State & Zip Code
**DiTech Financial LLC**
**1100 Landmark Towers**
**345 St. Peters Street**
**St. Paul, MN 55102**

On which line in Part 1 did you enter the creditor? __**2.1**__

Last 4 digits of account number ___

---

☐ Name, Number, Street, City, State & Zip Code
**DiTech Financial LLC**
**P.O. Box 6172**
**Rapid City, SD 57709**

On which line in Part 1 did you enter the creditor? __**2.1**__

Last 4 digits of account number ___

---

☐ Name, Number, Street, City, State & Zip Code
**Greentree Servicing LLC**
**7360 South Kyrne Road**
**Tempe, AZ 85283**

On which line in Part 1 did you enter the creditor? __**2.1**__

Last 4 digits of account number ___

---

☐ Name, Number, Street, City, State & Zip Code
**Huntington Bank**
**2361 Morse Road**
**Columbus, OH 43229**

On which line in Part 1 did you enter the creditor? __**2.9**__

Last 4 digits of account number ___

---

☐ Name, Number, Street, City, State & Zip Code
**Huntington Bank**
**831 State Street**
**Erie, PA 16505**

On which line in Part 1 did you enter the creditor? __**2.9**__

Last 4 digits of account number ___

---

☐ Name, Number, Street, City, State & Zip Code
**Huntington Mortgage Group**
**P.O. Box 1588**
**Dept. EAW25**
**Columbus, OH 43216**

On which line in Part 1 did you enter the creditor? __**2.9**__

Last 4 digits of account number ___

---

☐ Name, Number, Street, City, State & Zip Code
**Jennie C. Tsai, Esquire**
**Phelan, Hallinan Diamond & Jones LLP**
**1617 JFK Blvd., Suite 1400**
**One Penn Center Plaza**
**Philadelphia, PA 19103**

On which line in Part 1 did you enter the creditor? __**2.1**__

Last 4 digits of account number ___

---

☐ Name, Number, Street, City, State & Zip Code
**Sky Bank**
**831 State Street**
**Erie, PA 16505**

On which line in Part 1 did you enter the creditor? __**2.9**__

Last 4 digits of account number ___

---

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com        Best Case Bankruptcy

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **Leroy John Balzer** |
| | First Name   Middle Name   Last Name |
| Debtor 2 | **Karen Ann Balzer** |
| (Spouse if, filing) | First Name   Middle Name   Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number | **17-10652 TPA** |
| (if known) | |

☐ Check if this is an amended filing

Official Form 106E/F

## Schedule E/F: Creditors Who Have Unsecured Claims          12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

### Part 1:    List All of Your PRIORITY Unsecured Claims

1.  Do any creditors have priority unsecured claims against you?

    ■ No. Go to Part 2.

    ☐ Yes.

### Part 2:    List All of Your NONPRIORITY Unsecured Claims

3.  Do any creditors have nonpriority unsecured claims against you?

    ☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

    ■ Yes.

4.  **List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

| | | Total claim |
|---|---|---|
| 4.1 | **AAS Debt Recovery Inc.** | |
| | Nonpriority Creditor's Name | |

| | | |
|---|---|---|
| **AAS Debt Recovery Inc.** | Last 4 digits of account number   *0417* | **$656.23** |
| Nonpriority Creditor's Name | | |
| **P.O. Box 129** | When was the debt incurred?   *6/18/2013* | |
| **Monroeville, PA 15146** | | |
| Number Street City State Zip Code | As of the date you file, the claim is: Check all that apply | |

Who incurred the debt? Check one.

☐ Debtor 1 only

■ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ Check if this claim is for a  community debt

Is the claim subject to offset?

■ No

☐ Yes

☐ Contingent

☐ Unliquidated

☐ Disputed

Type of NONPRIORITY unsecured claim:

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify   *Credit Report/First National Bank of Pennsylvania*

| Debtor 1 | **Leroy John Balzer** | |
|---|---|---|
| Debtor 2 | **Karen Ann Balzer** | |

Case number *(if know)*   **17-10652 TPA**

---

| 4.2 | **Bank of America, N.A.** | | |
|---|---|---|---|

Nonpriority Creditor's Name

**P.O. Box 982238**
**El Paso, TX 79998-2235**
Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

Last 4 digits of account number    **9913**    $781.00

When was the debt incurred?    **2013**

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Credit Report/Charge Off**

---

| 4.3 | **CACH LLC** | | |
|---|---|---|---|

Nonpriority Creditor's Name

**4340 S. Monaco Street**
**2nd Floor**
**Denver, CO 80237**
Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

Last 4 digits of account number    $7,432.40

When was the debt incurred?    **2014**

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Judgment (2014-10794)**

---

| 4.4 | **Cavalry SPV I LLC** | | |
|---|---|---|---|

Nonpriority Creditor's Name

**500 Summit Lake Drive**
**Suite 400**
**Valhalla, NY 10595**
Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only
■ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

Last 4 digits of account number    $9,552.46

When was the debt incurred?    **2017**

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
■ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Pending Lawsuit  (2017-10689)**

---

| Debtor 1 | *Leroy John Balzer* |
|---|---|
| Debtor 2 | *Karen Ann Balzer* |

Case number (if know)    *17-10652 TPA*

---

| 4.5 | *Commercial Acceptance* | Last 4 digits of account number | *913X* | | $188.00 |
|---|---|---|---|---|---|

Nonpriority Creditor's Name
*2 Main Street*
*Shiremanstown, PA 17011*
Number Street City State Zip Code

When was the debt incurred?    *2014*

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

- ☐ Debtor 1 only
- ■ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify    *Medical Bill*

---

| 4.6 | *Commercial Acceptance* | Last 4 digits of account number | *99R9* | | $846.00 |
|---|---|---|---|---|---|

Nonpriority Creditor's Name
*2 Main Street*
*Shiremanstown, PA 17011*
Number Street City State Zip Code

When was the debt incurred?    *2016*

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

- ☐ Debtor 1 only
- ■ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify    *Medical Bill*

---

| 4.7 | *PNC Bank* | Last 4 digits of account number | *2400* | | $10,441.00 |
|---|---|---|---|---|---|

Nonpriority Creditor's Name
*P.O. Box 3180*
*Pittsburgh, PA 15230*
Number Street City State Zip Code

When was the debt incurred?    *2010*

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ■ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify    *Credit Card Purchases/Charged Off/Credit Report*

---

Debtor 1   *Leroy John Balzer*

Debtor 2   *Karen Ann Balzer*

Case number *(if know)*   **17-10652 TPA**

---

| 4.8 | **Portfolio Recovery Associates Inc.** | Last 4 digits of account number | **2657** | **$927.00** |
|---|---|---|---|---|

Nonpriority Creditor's Name

**P.O. Box 12914**

**Norfolk, VA 23541**

Number Street City State Zip Code

When was the debt incurred?   **2013**

**Who incurred the debt? Check one.**

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only

■ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify   *Credit Card Purchases/Capital One Bank, N.A./Credit Report*

---

| 4.9 | **Trident Asset Management** | Last 4 digits of account number | **0862** | **$411.00** |
|---|---|---|---|---|

Nonpriority Creditor's Name

**53 Perimiter Center East**

**Suite 440**

**Atlanta, GA 30346**

Number Street City State Zip Code

When was the debt incurred?   **2013**

**Who incurred the debt? Check one.**

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only

☐ Debtor 2 only

■ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify   *Collection Agency*

---

**Part 3:**   List Others to Be Notified About a Debt That You Already Listed

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

Name and Address

**Alliance One**

**4850 Street Road**

**Suite 300**

**Trevose, PA 19053**

On which entry in Part 1 or Part 2 did you list the original creditor?

Line **4.8** of (Check one):

☐ Part 1: Creditors with Priority Unsecured Claims

■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address

**AT&T**

**500 Summit Lake Drive**

**Suite 400**

**Valhalla, NY 10595**

On which entry in Part 1 or Part 2 did you list the original creditor?

Line **4.4** of (Check one):

☐ Part 1: Creditors with Priority Unsecured Claims

■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address

**Capital One Bank (USA), N.A.**

**P.O. Box 71083**

**Charlotte, NC 28272-1083**

On which entry in Part 1 or Part 2 did you list the original creditor?

Line **4.8** of (Check one):

☐ Part 1: Creditors with Priority Unsecured Claims

■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address

On which entry in Part 1 or Part 2 did you list the original creditor?

---

| Debtor 1 | *Leroy John Balzer* | |
|---|---|---|
| Debtor 2 | *Karen Ann Balzer* | |

Case number (*if know*)    **17-10652 TPA**

---

*CitiBank N.A.*
*500 Summit Lake Drive*
*Suite 400*
*Valhalla, NY 10595*

Line **4.4** of (*Check one*):

☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
*David J. Apothaker, Esquire*
*520 Fellowship Road C306*
*Mount Laurel, NJ 08054*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.4** of (*Check one*):

☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
*Lynn M. Taber, Esquire*
*1150 1st Avenue, #501*
*King of Prussia, PA 19406*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.3** of (*Check one*):

☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

| Part 4: | Add the Amounts for Each Type of Unsecured Claim |
|---|---|

6.  **Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.**

| | | | | | Total Claim |
|---|---|---|---|---|---|
| **Total claims from Part 1** | 6a. | **Domestic support obligations** | 6a. | $ | 0.00 |
| | 6b. | **Taxes and certain other debts you owe the government** | 6b. | $ | 0.00 |
| | 6c. | **Claims for death or personal injury while you were intoxicated** | 6c. | $ | 0.00 |
| | 6d. | **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. | $ | 0.00 |
| | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. | $ | 0.00 |

| | | | | | Total Claim |
|---|---|---|---|---|---|
| **Total claims from Part 2** | 6f. | **Student loans** | 6f. | $ | 0.00 |
| | 6g. | **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. | $ | 0.00 |
| | 6h. | **Debts to pension or profit-sharing plans, and other similar debts** | 6h. | $ | 0.00 |
| | 6i. | **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ | 31,235.09 |
| | 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. | $ | 31,235.09 |

---

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | *Leroy John Balzer* |
| | First Name · Middle Name · Last Name |
| Debtor 2 | *Karen Ann Balzer* |
| (Spouse if, filing) | First Name · Middle Name · Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number | *17-10652 TPA* |
| (if known) | |

☐ Check if this is an
amended filing

Official Form 106G

## Schedule G: Executory Contracts and Unexpired Leases
12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1.  **Do you have any executory contracts or unexpired leases?**
    ■ No. Check this box and file this form with the court with your other schedules. You have nothing else to report on this form.
    ☐ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2.  **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| Person or company with whom you have the contract or lease<br>Name, Number, Street, City, State and ZIP Code | State what the contract or lease is for |
|---|---|
| **2.1** | |
| Name | |
| Number      Street | |
| City              State          ZIP Code | |
| **2.2** | |
| Name | |
| Number      Street | |
| City              State          ZIP Code | |
| **2.3** | |
| Name | |
| Number      Street | |
| City              State          ZIP Code | |
| **2.4** | |
| Name | |
| Number      Street | |
| City              State          ZIP Code | |
| **2.5** | |
| Name | |
| Number      Street | |
| City              State          ZIP Code | |

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | *Leroy John Balzer* |
| | First Name                    Middle Name                    Last Name |
| Debtor 2 | *Karen Ann Balzer* |
| (Spouse if, filing) | First Name                    Middle Name                    Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number | *17-10652 TPA* |
| (if known) | |

☐ Check if this is an
amended filing

## Official Form 106H
## Schedule H: Your Codebtors                                                    12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

   **1. Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.)

   ■ No
   ☐ Yes

   **2. Within the last 8 years, have you lived in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

   ■ No. Go to line 3.
   ☐ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

   **3. In Column 1, list all of your codebtors.** Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.

| *Column 1:* **Your codebtor**<br>Name, Number, Street, City, State and ZIP Code | *Column 2:* **The creditor to whom you owe the debt**<br>Check all schedules that apply: |
|---|---|
| 3.1 _____<br>Name<br><br>_____<br>Number        Street<br>City                State                ZIP Code | ☐ Schedule D, line _____<br>☐ Schedule E/F, line _____<br>☐ Schedule G, line _____ |
| 3.2 _____<br>Name<br><br>_____<br>Number        Street<br>City                State                ZIP Code | ☐ Schedule D, line _____<br>☐ Schedule E/F, line _____<br>☐ Schedule G, line _____ |

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | *Leroy John Balzer* |
| Debtor 2 (Spouse, if filing) | *Karen Ann Balzer* |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number (If known) | *17-10652 TPA* |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD/ YYYY

## Official Form 106I
## Schedule I: Your Income

12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Describe Employment

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| Employment status | | ■ Employed<br>☐ Not employed | ☐ Employed<br>■ Not employed |
| Occupation | | *Salvage Contractor* | |
| Employer's name | | *Self-Employed* | |
| Employer's address | | *3623 Westlake Road*<br>*Erie, PA 16505* | |
| How long employed there? | | *40 Years* | |

### Part 2:    Give Details About Monthly Income

**Estimate monthly income as of the date you file this form.** If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ *0.00* | $ *0.00* |
| 3. | Estimate and list monthly overtime pay. | 3. | +$ *0.00* | +$ *0.00* |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. | $ *0.00* | $ *0.00* |

Debtor 1    **Leroy John Balzer**
Debtor 2    **Karen Ann Balzer**                                  Case number (*if known*)  **17-10652 TPA**

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| | **Copy line 4 here** ................................................................... | 4. | $ _____ **0.00** | $ _____ **0.00** |

**5.  List all payroll deductions:**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 5a. | **Tax, Medicare, and Social Security deductions** | 5a. | $ _____ **0.00** | $ _____ **0.00** |
| 5b. | **Mandatory contributions for retirement plans** | 5b. | $ _____ **0.00** | $ _____ **0.00** |
| 5c. | **Voluntary contributions for retirement plans** | 5c. | $ _____ **0.00** | $ _____ **0.00** |
| 5d. | **Required repayments of retirement fund loans** | 5d. | $ _____ **0.00** | $ _____ **0.00** |
| 5e. | **Insurance** | 5e. | $ _____ **0.00** | $ _____ **0.00** |
| 5f. | **Domestic support obligations** | 5f. | $ _____ **0.00** | $ _____ **0.00** |
| 5g. | **Union dues** | 5g. | $ _____ **0.00** | $ _____ **0.00** |
| 5h. | **Other deductions.** Specify: _____ | 5h.+ | $ _____ **0.00** + | $ _____ **0.00** |

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 6. | **Add the payroll deductions.**  Add lines 5a+5b+5c+5d+5e+5f+5g+5h. | 6. | $ _____ **0.00** | $ _____ **0.00** |
| 7. | **Calculate total monthly take-home pay.**  Subtract line 6 from line 4. | 7. | $ _____ **0.00** | $ _____ **0.00** |

**8.  List all other income regularly received:**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 8a. | **Net income from rental property and from operating a business, profession, or farm**  Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ _____ **2,942.00** | $ _____ **0.00** |
| 8b. | **Interest and dividends** | 8b. | $ _____ **0.00** | $ _____ **0.00** |
| 8c. | **Family support payments that you, a non-filing spouse, or a dependent regularly receive**  Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ _____ **0.00** | $ _____ **0.00** |
| 8d. | **Unemployment compensation** | 8d. | $ _____ **0.00** | $ _____ **0.00** |
| 8e. | **Social Security** | 8e. | $ _____ **0.00** | $ _____ **0.00** |
| 8f. | **Other government assistance that you regularly receive**  Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies.  Specify: _____ | 8f. | $ _____ **0.00** | $ _____ **0.00** |
| 8g. | **Pension or retirement income** | 8g. | $ _____ **0.00** | $ _____ **0.00** |
| 8h. | **Other monthly income.** Specify: _____ | 8h.+ | $ _____ **0.00** + | $ _____ **0.00** |

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 9. | **Add all other income.**  Add lines 8a+8b+8c+8d+8e+8f+8g+8h. | 9. | $ **2,942.00** | $ **0.00** |

| | | | | |
|---|---|---|---|---|
| 10. | **Calculate monthly income.**  Add line 7 + line 9.  Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse. | 10. | $ **2,942.00** + $ **0.00** = $ **2,942.00** | |

11.  **State all other regular contributions to the expenses that you list in *Schedule J.***
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
Specify: _____                                                                                    11.  +$ _____ **0.00**

12.  **Add the amount in the last column of line 10 to the amount in line 11.**  The result is the combined monthly income. Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data*, if it applies                                                 12.  $ **2,942.00**

**Combined monthly income**

13.  **Do you expect an increase or decrease within the year after you file this form?**
☑  No.
☐  Yes. Explain: | **The Debtor receives rental income of $500.00 per for 706 Linden Avenue.** |

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | *Leroy John Balzer* |
| Debtor 2<br>(Spouse, if filing) | *Karen Ann Balzer* |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number<br>(If known) | *17-10652 TPA* |

Check if this is:

☐ An amended filing
☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

## Official Form 106J
# Schedule J: Your Expenses                                              12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Describe Your Household

1.  **Is this a joint case?**

    ☐ No. Go to line 2.

    ■ Yes. **Does Debtor 2 live in a separate household?**

    ■ No

    ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2.  **Do you have dependents?**        ■ No

    Do not list Debtor 1 and        ☐ Yes.  Fill out this information for
    Debtor 2.                                each dependent..............

    Do not state the
    dependents names.

| | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|---|
| | _____ | _____ | ☐ No<br>☐ Yes |
| | _____ | _____ | ☐ No<br>☐ Yes |
| | _____ | _____ | ☐ No<br>☐ Yes |
| | _____ | _____ | ☐ No<br>☐ Yes |

3.  **Do your expenses include expenses of people other than yourself and your dependents?**        ■ No
    ☐ Yes

## Part 2:    Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

|  |  | **Your expenses** |
|---|---|---|

4.  The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot.        4. $ _____ *986.22*

    If not included in line 4:

    4a.    Real estate taxes        4a. $ _____ *0.00*
    4b.    Property, homeowner's, or renter's insurance        4b. $ _____ *0.00*
    4c.    Home maintenance, repair, and upkeep expenses        4c. $ _____ *0.00*
    4d.    Homeowner's association or condominium dues        4d. $ _____ *0.00*
5.  **Additional mortgage payments for your residence,** such as home equity loans        5. $ _____ *367.00*

| Debtor 1 | **Leroy John Balzer** | | | |
|---|---|---|---|---|
| Debtor 2 | **Karen Ann Balzer** | | Case number (if known) | **17-10652 TPA** |

6. **Utilities:**
| | | | | |
|---|---|---|---|---|
| 6a. | Electricity, heat, natural gas | 6a. | $ | **80.00** |
| 6b. | Water, sewer, garbage collection | 6b. | $ | **56.00** |
| 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ | **80.00** |
| 6d. | Other. Specify: | 6d. | $ | **0.00** |

| | | | | |
|---|---|---|---|---|
| 7. | **Food and housekeeping supplies** | 7. | $ | **300.00** |
| 8. | **Childcare and children's education costs** | 8. | $ | **0.00** |
| 9. | **Clothing, laundry, and dry cleaning** | 9. | $ | **20.00** |
| 10. | **Personal care products and services** | 10. | $ | **15.00** |
| 11. | **Medical and dental expenses** | 11. | $ | **25.00** |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. | $ | **110.00** |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | $ | **20.00** |
| 14. | **Charitable contributions and religious donations** | 14. | $ | **5.00** |

15. **Insurance.**
Do not include insurance deducted from your pay or included in lines 4 or 20.
| | | | | |
|---|---|---|---|---|
| 15a. | Life insurance | 15a. | $ | **0.00** |
| 15b. | Health insurance | 15b. | $ | **0.00** |
| 15c. | Vehicle insurance | 15c. | $ | **97.00** |
| 15d. | Other insurance. Specify: | 15d. | $ | **0.00** |

| | | | | |
|---|---|---|---|---|
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | 16. | $ | **0.00** |

17. **Installment or lease payments:**
| | | | | |
|---|---|---|---|---|
| 17a. | Car payments for Vehicle 1 | 17a. | $ | **0.00** |
| 17b. | Car payments for Vehicle 2 | 17b. | $ | **0.00** |
| 17c. | Other. Specify: | 17c. | $ | **0.00** |
| 17d. | Other. Specify: | 17d. | $ | **0.00** |

| | | | | |
|---|---|---|---|---|
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, Schedule I, Your Income (Official Form 106I).** | 18. | $ | **0.00** |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | 19. | $ | **0.00** |

20. **Other real property expenses not included in lines 4 or 5 of this form or on Schedule I: Your Income.**
| | | | | |
|---|---|---|---|---|
| 20a. | Mortgages on other property | 20a. | $ | **614.00** |
| 20b. | Real estate taxes | 20b. | $ | **0.00** |
| 20c. | Property, homeowner's, or renter's insurance | 20c. | $ | **0.00** |
| 20d. | Maintenance, repair, and upkeep expenses | 20d. | $ | **0.00** |
| 20e. | Homeowner's association or condominium dues | 20e. | $ | **0.00** |

| | | | | |
|---|---|---|---|---|
| 21. | **Other:** Specify: | 21. | +$ | **0.00** |

| | | | | |
|---|---|---|---|---|
| 22. | **Calculate your monthly expenses** | | | |
| | 22a. Add lines 4 through 21. | | $ | **2,775.22** |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | | $ | |
| | 22c. Add line 22a and 22b. The result is your monthly expenses. | | $ | **2,775.22** |

| | | | | |
|---|---|---|---|---|
| 23. | **Calculate your monthly net income.** | | | |
| | 23a. Copy line 12 (your combined monthly income) from Schedule I. | 23a. | $ | **2,942.00** |
| | 23b. Copy your monthly expenses from line 22c above. | 23b. | -$ | **2,775.22** |
| | 23c. Subtract your monthly expenses from your monthly income. The result is your monthly net income. | 23c. | $ | **166.78** |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.
☐ Yes.    Explain here:

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | *Leroy John Balzer* |
| | First Name     Middle Name     Last Name |
| Debtor 2 | *Karen Ann Balzer* |
| (Spouse if, filing) | First Name     Middle Name     Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number | *17-10652 TPA* |
| (if known) | |

☐ Check if this is an amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules

12/15

If two married people are filing together, both are equally responsible for supplying correct information.

You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**Sign Below**

Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?

■ No

☐ Yes.  Name of person _____    Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119)

Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.

| X  */s/ Leroy John Balzer* | X  */s/ Karen Ann Balzer* |
|---|---|
| *Leroy John Balzer* | *Karen Ann Balzer* |
| Signature of Debtor 1 | Signature of Debtor 2 |
| Date  *July 14, 2017* | Date  *July 14, 2017* |

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                                          Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | *Leroy John Balzer* |
| | First Name            Middle Name            Last Name |
| Debtor 2 | *Karen Ann Balzer* |
| (Spouse if, filing) | First Name            Middle Name            Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number (if known) | *17-10652 TPA* |

☐ Check if this is an amended filing

# Official Form 107
# Statement of Financial Affairs for Individuals Filing for Bankruptcy          4/16

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.  If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

**Part 1:      Give Details About Your Marital Status and Where You Lived Before**

1.  **What is your current marital status?**

   ■ Married
   ☐ Not married

2.  **During the last 3 years, have you lived anywhere other than where you live now?**

   ■ No
   ☐ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

   | Debtor 1 Prior Address: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
   |---|---|---|---|
   | | | | |

3.  **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

   ■ No
   ☐ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

**Part 2     Explain the Sources of Your Income**

4.  **Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
   Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
   If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

   ☐ No
   ■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) |
| From January 1 of current year until the date you filed for bankruptcy: | ☐ Wages, commissions, bonuses, tips | *$27,771.00* | ☐ Wages, commissions, bonuses, tips | *$0.00* |
| | ■ Operating a business | | ☐ Operating a business | |

| | Debtor 1 | Leroy John Balzer | | |
| | Debtor 2 | Karen Ann Balzer | | Case number *(if known)* | **17-10652 TPA** |

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) |
| **For last calendar year:**<br>**(January 1 to December 31, 2016 )** | ☐ Wages, commissions, bonuses, tips<br><br>■ Operating a business | *$14,637.00* | ☐ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | *$0.00* |
| **For the calendar year before that:**<br>**(January 1 to December 31, 2015 )** | ☐ Wages, commissions, bonuses, tips<br><br>■ Operating a business | *$15,871.00* | ☐ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | *$0.00* |

5. **Did you receive any other income during this year or the two previous calendar years?**
   Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

   List each source and the gross income from each source separately. Do not include income that you listed in line 4.

   ■ No
   ☐ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Describe below. | **Gross income from each source**<br>(before deductions and exclusions) | **Sources of income**<br>Describe below. | **Gross income**<br>(before deductions and exclusions) |

## Part 3:    List Certain Payments You Made Before You Filed for Bankruptcy

6. **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

   ☐ No.  **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

   During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,425* or more?
   ☐ No.  Go to line 7.
   ☐ Yes  List below each creditor to whom you paid a total of $6,425* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.
   * Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.

   ■ Yes.  **Debtor 1 or Debtor 2 or both have primarily consumer debts.**
   During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

   ☐ No.  Go to line 7.
   ■ Yes  List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|
| *PNC Bank*<br>*2730 Liberty Avenue*<br>*Pittsburgh, PA 15222* | *6/7/2017:*<br>*$1,036.00* | *$0.00* | *$87,420.00* | ■ Mortgage<br>☐ Car<br>☐ Credit Card<br>☐ Loan Repayment<br>☐ Suppliers or vendors<br>☐ Other___ |

| Debtor 1 | *Leroy John Balzer* | | |
|---|---|---|---|
| Debtor 2 | *Karen Ann Balzer* | Case number *(if known)* | *17-10652 TPA* |

7.  **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
    *Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

    ■ No
    ☐ Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|
| | | | | |

8.  **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
    Include payments on debts guaranteed or cosigned by an insider.

    ■ No
    ☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment Include creditor's name |
|---|---|---|---|---|
| | | | | |

**Part 4:**    Identify Legal Actions, Repossessions, and Foreclosures

9.  **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
    List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

    ☐ No
    ■ Yes. Fill in the details.

| Case title Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| *Commonwealth of Pennsylvania, Dept. of Revenue vs. Leroy J. Balzer and Karen A. Balzer No. 2012-30489* | *Tax Lien* | *Court of Common Pleas of Erie County Erie County Courthouse 140 West Sixth Street Erie, PA 16501* | ☐ Pending<br>☐ On appeal<br>☐ Concluded<br><br>*Judgment was entered on March 29, 2012 in the amount of $3,473.84.* |
| *Commonwealth of Pennsylvania, Dept. of Revenue vs. Leroy A. Balzer and Karen A. Balzer No. 2014-30413* | *Tax Lien* | *Court of Common Pleas of Erie County Erie County Courthouse 140 West Sixth Street Erie, PA 16501* | ☐ Pending<br>☐ On appeal<br>☐ Concluded<br><br>*Judgment was entered on 3/19/2014 in the amount of $3,047.47.* |
| *Commonwealth of Pennsylvania vs. Leroy J. Balzer and Karen A. Balzer No. 2015-30740* | *Tax Lien* | *Court of Common Pleas of Erie County Erie County Courthouse 140 West Sixth Street Erie, PA 16501* | ☐ Pending<br>☐ On appeal<br>☐ Concluded<br><br>*Judgment was entered on 5/26/2015 in the amount of $1,246.58.* |

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com

| Debtor 1 | *Leroy John Balzer* |
| Debtor 2 | *Karen Ann Balzer* |

Case number *(if known)*  **17-10652 TPA**

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| *Commonwealth of Pennsylvania,*<br>*Dept. of Revenue vs. Leroy J.*<br>*Balzer and Karen A. Balzer*<br>*No. 2016-31061* | *Tax Lien* | *Court of Common Pleas of*<br>*Erie County*<br>*Erie County Courthouse*<br>*140 West Sixth Street*<br>*Erie, PA 16501* | ☐ Pending<br>☐ On appeal<br>☐ Concluded<br><br>*Judgment was entered on*<br>*7/21/2016 in the amount of*<br>*$1,352.01.* |
| *Cavalry SPV I LLC/CitiBank*<br>*N.A./AT&T vs. Karen A. Balzer*<br>*No. 2017-10689* | *Collection* | *Court of Common Pleas of*<br>*Erie County*<br>*Erie County Courthouse*<br>*140 West Sixth Street*<br>*Erie, PA 16501* | ☐ Pending<br>☐ On appeal<br>☐ Concluded<br><br>*Pending* |
| *United States of America vs. Leroy*<br>*J. Balzer and Karen A. Balzer*<br>*No. 2009-31149* | *Collection* | *Court of Common Pleas of*<br>*Erie County*<br>*Erie County Courthouse*<br>*140 West Sixth Street*<br>*Erie, PA 16501* | ☐ Pending<br>☐ On appeal<br>☐ Concluded<br><br>*Judgment was entered on*<br>*6/1/2009 in the amount of*<br>*$6,578.73.* |
| *United States of America, Internal*<br>*Revenue Service vs. Leroy J.*<br>*Balzer and Karen A. Balzer*<br>*No. 2010-32242* | *Tax Lien* | *Court of Common Pleas of*<br>*Erie County*<br>*Erie County Courthouse*<br>*140 West Sixth Street*<br>*Erie, PA 16501* | ☐ Pending<br>☐ On appeal<br>☐ Concluded<br><br>*Judgment was entered on*<br>*9/20/2010 in the amount of*<br>*$6,872.58.* |
| *DiTech Financial LLC/Green Tree*<br>*Servicing LLC vs. Leroy J. Balzer,*<br>*Karen A. Balzer, and United States*<br>*of America*<br>*No. 2017-11705* | *Mortgage*<br>*Foreclosure* | *Court of Common Pleas of*<br>*Erie County*<br>*Erie County Courthouse*<br>*140 West Sixth Street*<br>*Erie, PA 16501* | ☐ Pending<br>☐ On appeal<br>☐ Concluded<br><br>*Pending* |
| *Cach LLC vs. Leroy J. Balzer*<br>*No. 2014-10794* | *Collection* | *Court of Common Pleas of*<br>*Erie County*<br>*Erie County Courthouse*<br>*140 West Sixth Street*<br>*Erie, PA 16501* | ☐ Pending<br>☐ On appeal<br>☐ Concluded<br><br>*Judgment was entered on*<br>*11/2/2015 in the amount of*<br>*$7,432.40.* |
| *Huntington National Bank vs.*<br>*Karen A. Blazer, Leroy J. Blazer,*<br>*and United States of America*<br>*(Karen A. Balzer's and Leroy J.*<br>*Balzer's last name is misspelled on*<br>*the Docket of this case.)*<br>*No. 2014-12821* | *Mortgage*<br>*Foreclosure* | *Court of Common Pleas of*<br>*Erie County*<br>*Erie County Courthouse*<br>*140 West Sixth Street*<br>*Erie, PA 16501* | ☐ Pending<br>☐ On appeal<br>☐ Concluded<br><br>*Judgment was entered on*<br>*2/21/2017 in the amount of*<br>*$65,956.37.* |

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                                          Best Case Bankruptcy

| Debtor 1 | *Leroy John Balzer* | | |
|---|---|---|---|
| Debtor 2 | *Karen Ann Balzer* | Case number *(if known)* | *17-10652 TPA* |

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
Check all that apply and fill in the details below.

■ No. Go to line 11.
☐ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property

Explain what happened | Date | Value of the property |
|---|---|---|---|

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**
■ No
☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**
■ No
☐ Yes

| Part 5: | List Certain Gifts and Contributions |
|---|---|

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**
■ No
☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person

Person to Whom You Gave the Gift and Address: | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**
■ No
☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total more than $600
Charity's Name
**Address** (Number, Street, City, State and ZIP Code) | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|

| Part 6: | List Certain Losses |
|---|---|

15. **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

☐ No
■ Yes. Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss

Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property.* | Date of your loss | Value of property lost |
|---|---|---|---|
| *2 Forklifts/Fire at warehouse* | | *June, 2017* | *$3,500.00* |

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

| Debtor 1 | *Leroy John Balzer* | | |
|---|---|---|---|
| Debtor 2 | *Karen Ann Balzer* | Case number *(if known)* | **17-10652 TPA** |

| **Part 7:** | **List Certain Payments or Transfers** |
|---|---|

16. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No
■ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| *Quinn, Buseck, Leemhuis, Toohey, & Kroto*<br>*2222 West Grandview Boulevard*<br>*Erie, PA 16506* | *As of the date of the filing of the Petition, Counsel for the Debtor has received a total of $1,500.00, which represents $1,000.00 in attorney's fees and a $500.00 expense charge. This expense charge includes the filing fee, a bringdown search fee, and photocopying and postage costs.* | *6/22/2017* | *$1,500.00* |
| *Morrow & Artim PC* | *Collection Defense Firm* | *4/5/2017*<br>*4/11/2017* | *$1,250.00* |

17. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**
Do not include any payment or transfer that you listed on line 16.

■ No
☐ Yes. Fill in the details.

| Person Who Was Paid<br>Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

18. **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

■ No
☐ Yes. Fill in the details.

| Person Who Received Transfer<br>Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices*.)

■ No
☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

**Statement of Financial Affairs for Individuals Filing for Bankruptcy**

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com

| Debtor 1 | *Leroy John Balzer* | | |
|---|---|---|---|
| Debtor 2 | *Karen Ann Balzer* | Case number *(if known)* | **17-10652 TPA** |

---

**Part 8:**   **List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units**

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

■ **No**
☐ **Yes. Fill in the details.**

| Name of Financial Institution and Address *(Number, Street, City, State and ZIP Code)* | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

■ **No**
☐ **Yes. Fill in the details.**

| Name of Financial Institution Address *(Number, Street, City, State and ZIP Code)* | Who else had access to it? Address *(Number, Street, City, State and ZIP Code)* | Describe the contents | Do you still have it? |
|---|---|---|---|

22. **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**

■ **No**
☐ **Yes. Fill in the details.**

| Name of Storage Facility Address *(Number, Street, City, State and ZIP Code)* | Who else has or had access to it? Address *(Number, Street, City, State and ZIP Code)* | Describe the contents | Do you still have it? |
|---|---|---|---|

---

**Part 9:**   **Identify Property You Hold or Control for Someone Else**

23. **Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**

■ **No**
☐ **Yes.  Fill in the details.**

| Owner's Name Address *(Number, Street, City, State and ZIP Code)* | Where is the property? *(Number, Street, City, State and ZIP Code)* | Describe the property | Value |
|---|---|---|---|

---

**Part 10:**   **Give Details About Environmental Information**

For the purpose of Part 10, the following definitions apply:

■ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

■ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

■ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24. **Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

■ **No**
☐ **Yes. Fill in the details.**

| Name of site Address *(Number, Street, City, State and ZIP Code)* | Governmental unit Address *(Number, Street, City, State and ZIP Code)* | Environmental law, if you know it | Date of notice |
|---|---|---|---|

---

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

| Debtor 1 | *Leroy John Balzer* |
|---|---|
| Debtor 2 | *Karen Ann Balzer* |

Case number *(if known)*   **17-10652 TPA**

**25.  Have you notified any governmental unit of any release of hazardous material?**

- ☑ No
- ☐ Yes. Fill in the details.

| Name of site<br>**Address** (Number, Street, City, State and ZIP Code) | Governmental unit<br>**Address** (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|
|  |  |  |  |

**26.  Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

- ☑ No
- ☐ Yes. Fill in the details.

| Case Title<br>Case Number | Court or agency<br>Name<br>**Address** (Number, Street, City, State and ZIP Code) | Nature of the case | Status of the case |
|---|---|---|---|
|  |  |  |  |

**Part 11:**   **Give Details About Your Business or Connections to Any Business**

**27.  Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

- ☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time
- ☐ A member of a limited liability company (LLC) or limited liability partnership (LLP)
- ☐ A partner in a partnership
- ☐ An officer, director, or managing executive of a corporation
- ☐ An owner of at least 5% of the voting or equity securities of a corporation
- ☑ No. None of the above applies.  Go to Part 12.
- ☐ Yes. Check all that apply above and fill in the details below for each business.

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
|  |  |  |

**28.  Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

- ☑ No
- ☐ Yes. Fill in the details below.

| Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|
|  |  |

**Part 12:**   **Sign Below**

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

| */s/ Leroy John Balzer* | */s/ Karen Ann Balzer* |
|---|---|
| *Leroy John Balzer* | *Karen Ann Balzer* |
| **Signature of Debtor 1** | **Signature of Debtor 2** |

| Date | *July 14, 2017* | Date | *July 14, 2017* |
|---|---|---|---|

**Did you attach additional pages to** *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* **(Official Form 107)?**
- ☑ No
- ☐ Yes

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**
- ☑ No
- ☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

Debtor 1    *Leroy John Balzer*
Debtor 2    *Karen Ann Balzer*

Case number *(if known)*    **17-10652 TPA**

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | *Leroy John Balzer* |
| Debtor 2 (Spouse, if filing) | *Karen Ann Balzer* |
| United States Bankruptcy Court for the: | Western District of Pennsylvania |
| Case number (if known) | *17-10652 TPA* |

**Check as directed in lines 17 and 21:**

According to the calculations required by this Statement:

■ 1. Disposable income is not determined under 11 U.S.C. § 1325(b)(3).

☐ 2. Disposable income is determined under 11 U.S.C. § 1325(b)(3).

■ 3. The commitment period is 3 years.

☐ 4. The commitment period is 5 years.

☐ Check if this is an amended filing

## Official Form 122C-1
# Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for being accurate. If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known).

**Part 1:**   **Calculate Your Average Monthly Income**

1. **What is your marital and filing status?** Check one only.

   ☐ **Not married.** Fill out Column A, lines 2-11.

   ■ **Married.** Fill out both Columns A and B, lines 2-11.

Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case. 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

| | | Column A<br>Debtor 1 | Column B<br>Debtor 2 or<br>non-filing spouse |
|---|---|---|---|
| 2. | **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $ *0.00* | $ *0.00* |
| 3. | **Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | $ *0.00* | $ *0.00* |
| 4. | **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Include regular contributions from a spouse only if Column B is not filled in. Do not include payments you listed on line 3. | $ *0.00* | $ *0.00* |

5. **Net income from operating a business, profession, or farm**

| | Debtor 1 | | | |
|---|---|---|---|---|
| Gross receipts (before all deductions) | $ *4,128.50* | | | |
| Ordinary and necessary operating expenses | -$ *1,686.50* | | | |
| Net monthly income from a business, profession, or farm | $ *2,442.00* | Copy here -> | $ *2,442.00* | $ *0.00* |

6. **Net income from rental and other real property**

| | Debtor 1 | | | |
|---|---|---|---|---|
| Gross receipts (before all deductions) | $ *500.00* | | | |
| Ordinary and necessary operating expenses | -$ *0.00* | | | |
| Net monthly income from rental or other real property | $ *500.00* | Copy here -> | $ *500.00* | $ *0.00* |

Official Form 122C-1        **Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period**        **page 1**

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                                                                                       Best Case Bankruptcy

Debtor 1    **Leroy John Balzer**
Debtor 2    **Karen Ann Balzer**

Case number (*if known*)    **17-10652 TPA**

|  | Column A<br>Debtor 1 | Column B<br>Debtor 2 or<br>non-filing spouse |
|---|---|---|
| 7. **Interest, dividends, and royalties** | $ _____ 0.00 | $ _____ 0.00 |
| 8. **Unemployment compensation** | $ _____ 0.00 | $ _____ 0.00 |

Do not enter the amount if you contend that the amount received was a benefit under the Social Security Act. Instead, list it here:

For you         $ _____ 0.00

For your spouse   $ _____ 0.00

| 9. **Pension or retirement income.** Do not include any amount received that was a benefit under the Social Security Act. | $ _____ 0.00 | $ _____ 0.00 |

10. **Income from all other sources not listed above.** Specify the source and amount. Do not include any benefits received under the Social Security Act or payments received as a victim of a war crime, a crime against humanity, or international or domestic terrorism. If necessary, list other sources on a separate page and put the total below.

| | $ _____ 0.00 | $ _____ 0.00 |
| | $ _____ 0.00 | $ _____ 0.00 |
| Total amounts from separate pages, if any. | + $ _____ 0.00 | $ _____ 0.00 |

11. **Calculate your total average monthly income.** Add lines 2 through 10 for each column. Then add the total for Column A to the total for Column B.

$ **2,942.00** + $ **0.00** = $ **2,942.00**

Total average
monthly income

| **Part 2:** | Determine How to Measure Your Deductions from Income |
|---|---|

12. **Copy your total average monthly income from line 11.** ............................................. $ **2,942.00**

13. **Calculate the marital adjustment.** Check one:

☐ You are not married. Fill in 0 below.

☑ You are married and your spouse is filing with you. Fill in 0 below.

☐ You are married and your spouse is not filing with you.

Fill in the amount of the income listed in line 11, Column B, that was NOT regularly paid for the household expenses of you or your dependents, such as payment of the spouse's tax liability or the spouse's support of someone other than you or your dependents.

Below, specify the basis for excluding this income and the amount of income devoted to each purpose. If necessary, list additional adjustments on a separate page.

If this adjustment does not apply, enter 0 below.

_____ $ _____

_____ $ _____

_____ + $ _____

Total .................................. $ _____ 0.00   Copy here=>   - _____ 0.00

14. **Your current monthly income.** Subtract line 13 from line 12.   $ **2,942.00**

15. **Calculate your current monthly income for the year.** Follow these steps:

15a. Copy line 14 here=> .........................................................   $ **2,942.00**

Multiply line 15a by 12 (the number of months in a year).   x 12

15b. The result is your current monthly income for the year for this part of the form. ...........................   $ **35,304.00**

| Debtor 1 | *Leroy John Balzer* |
| Debtor 2 | *Karen Ann Balzer* |

Case number (*if known*) **17-10652 TPA**

---

16. **Calculate the median family income that applies to you.** Follow these steps:

16a. Fill in the state in which you live.   *PA*

16b. Fill in the number of people in your household.   *2*

16c. Fill in the median family income for your state and size of household.   $ **61,271.00**
To find a list of applicable median income amounts, go online using the link specified in the separate instructions for this form. This list may also be available at the bankruptcy clerk's office.

17. **How do the lines compare?**

17a. ■ Line 15b is less than or equal to line 16c. On the top of page 1 of this form, check box 1, *Disposable income is not determined under 11 U.S.C. § 1325(b)(3)*. **Go to Part 3.** Do NOT fill out *Calculation of Your Disposable Income* (Official Form 122C-2).

17b. ☐ Line 15b is more than line 16c. On the top of page 1 of this form, check box 2, *Disposable income is determined under 11 U.S.C. § 1325(b)(3)*. **Go to Part 3 and fill out Calculation of Your Disposable Income (Official Form 122C-2).** On line 39 of that form, copy your current monthly income from line 14 above.

**Part 3:   Calculate Your Commitment Period Under 11 U.S.C. § 1325(b)(4)**

18. **Copy your total average monthly income from line 11 .**   $ **2,942.00**

19. **Deduct the marital adjustment if it applies.** If you are married, your spouse is not filing with you, and you contend that calculating the commitment period under 11 U.S.C. § 1325(b)(4) allows you to deduct part of your spouse's income, copy the amount from line 13.

19a. If the marital adjustment does not apply, fill in 0 on line 19a.   -$ **0.00**

19b. **Subtract line 19a from line 18.**   $ **2,942.00**

20. **Calculate your current monthly income for the year.** Follow these steps:

20a. Copy line 19b   $ **2,942.00**

Multiply by 12 (the number of months in a year).   **x 12**

20b. The result is your current monthly income for the year for this part of the form.   $ **35,304.00**

20c. Copy the median family income for your state and size of household from line 16c   $ **61,271.00**

21. **How do the lines compare?**

■ Line 20b is less than line 20c. Unless otherwise ordered by the court, on the top of page 1 of this form, check box 3, *The commitment period is 3 years*. Go to Part 4.

☐ Line 20b is more than or equal to line 20c. Unless otherwise ordered by the court, on the top of page 1 of this form, check box 4, *The commitment period is 5 years*. Go to Part 4.

**Part 4:   Sign Below**

By signing here, under penalty of perjury I declare that the information on this statement and in any attachments is true and correct.

X */s/ Leroy John Balzer*   X */s/ Karen Ann Balzer*
*Leroy John Balzer*   *Karen Ann Balzer*
Signature of Debtor 1   Signature of Debtor 2

Date *July 14, 2017*   Date *July 14, 2017*
MM / DD / YYYY   MM / DD / YYYY

If you checked 17a, do NOT fill out or file Form 122C-2.

If you checked 17b, fill out Form 122C-2 and file it with this form. On line 39 of that form, copy your current monthly income from line 14 above.

# Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)

**This notice is for you if:**

> **You are an individual filing for bankruptcy,** and
>
> **Your debts are primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

**The types of bankruptcy that are available to individuals**

Individuals who meet the qualifications may file under one of four different chapters of Bankruptcy Code:

> Chapter 7 - Liquidation
>
> Chapter 11 - Reorganization
>
> Chapter 12 - Voluntary repayment plan for family farmers or fishermen
>
> Chapter 13 - Voluntary repayment plan for individuals with regular income

**You should have an attorney review your decision to file for bankruptcy and the choice of chapter.**

| Chapter 7: | Liquidation |
|---|---|
| $245 | filing fee |
| $75 | administrative fee |
| + $15 | trustee surcharge |
| $335 | total fee |

Chapter 7 is for individuals who have financial difficulty preventing them from paying their debts and who are willing to allow their nonexempt property to be used to pay their creditors. The primary purpose of filing under chapter 7 is to have your debts discharged. The bankruptcy discharge relieves you after bankruptcy from having to pay many of your pre-bankruptcy debts. Exceptions exist for particular debts, and liens on property may still be enforced after discharge. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

However, if the court finds that you have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge.

You should know that even if you file chapter 7 and you receive a discharge, some debts are not discharged under the law. Therefore, you may still be responsible to pay:

> most taxes;
>
> most student loans;
>
> domestic support and property settlement obligations;

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

most fines, penalties, forfeitures, and criminal restitution obligations; and

certain debts that are not listed in your bankruptcy papers.

You may also be required to pay debts arising from:

fraud or theft;

fraud or defalcation while acting in breach of fiduciary capacity;

intentional injuries that you inflicted; and

death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs.

If your debts are primarily consumer debts, the court can dismiss your chapter 7 case if it finds that you have enough income to repay creditors a certain amount. You must file *Chapter 7 Statement of Your Current Monthly Income* (Official Form 122A–1) if you are an individual filing for bankruptcy under chapter 7. This form will determine your current monthly income and compare whether your income is more than the median income that applies in your state.

If your income is not above the median for your state, you will not have to complete the other chapter 7 form, the *Chapter 7 Means Test Calculation* (Official Form 122A–2).

If your income is above the median for your state, you must file a second form —the *Chapter 7 Means Test Calculation* (Official Form 122A–2). The calculations on the form— sometimes called the *Means Test*—deduct from your income living expenses and payments on certain debts to determine any amount available to pay unsecured creditors. If

your income is more than the median income for your state of residence and family size, depending on the results of the *Means Test*, the U.S. trustee, bankruptcy administrator, or creditors can file a motion to dismiss your case under § 707(b) of the Bankruptcy Code. If a motion is filed, the court will decide if your case should be dismissed. To avoid dismissal, you may choose to proceed under another chapter of the Bankruptcy Code.

If you are an individual filing for chapter 7 bankruptcy, the trustee may sell your property to pay your debts, subject to your right to exempt the property or a portion of the proceeds from the sale of the property. The property, and the proceeds from property that your bankruptcy trustee sells or liquidates that you are entitled to, is called *exempt property*. Exemptions may enable you to keep your home, a car, clothing, and household items or to receive some of the proceeds if the property is sold.

Exemptions are not automatic. To exempt property, you must list it on *Schedule C: The Property You Claim as Exempt* (Official Form 106C). If you do not list the property, the trustee may sell it and pay all of the proceeds to your creditors.

## Chapter 11: Reorganization

| | | |
|---|---:|---|
| | $1,167 | filing fee |
| + | $550 | administrative fee |
| | $1,717 | total fee |

Chapter 11 is often used for reorganizing a business, but is also available to individuals. The provisions of chapter 11 are too complicated to summarize briefly.

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

**Read These Important Warnings**

Because bankruptcy can have serious long-term financial and legal consequences, including loss of your property, you should hire an attorney and carefully consider all of your options before you file. Only an attorney can give you legal advice about what can happen as a result of filing for bankruptcy and what your options are. If you do file for bankruptcy, an attorney can help you fill out the forms properly and protect you, your family, your home, and your possessions.

Although the law allows you to represent yourself in bankruptcy court, you should understand that many people find it difficult to represent themselves successfully. The rules are technical, and a mistake or inaction may harm you. If you file without an attorney, you are still responsible for knowing and following all of the legal requirements.

You should not file for bankruptcy if you are not eligible to file or if you do not intend to file the necessary documents.

Bankruptcy fraud is a serious crime; you could be fined and imprisoned if you commit fraud in your bankruptcy case. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Chapter 12: Repayment plan for family farmers or fishermen

| | $200 | filing fee |
|---|---|---|
| + | $75 | administrative fee |
| | $275 | total fee |

Similar to chapter 13, chapter 12 permits family farmers and fishermen to repay their debts over a period of time using future earnings and to discharge some debts that are not paid.

## Chapter 13: Repayment plan for individuals with regular income

| | $235 | filing fee |
|---|---|---|
| + | $75 | administrative fee |
| | $310 | total fee |

Chapter 13 is for individuals who have regular income and would like to pay all or part of their debts in installments over a period of time and to discharge some debts that are not paid. You are eligible for chapter 13 only if your debts are not more than certain dollar amounts set forth in 11 U.S.C. § 109.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, usually using your future earnings. If the court approves your plan, the court will allow you to repay your debts, as adjusted by the plan, within 3 years or 5 years, depending on your income and other factors.

After you make all the payments under your plan, many of your debts are discharged. The debts that are not discharged and that you may still be responsible to pay include:

domestic support obligations,

most student loans,

certain taxes,

debts for fraud or theft,

debts for fraud or defalcation while acting in a fiduciary capacity,

most criminal fines and restitution obligations,

certain debts that are not listed in your bankruptcy papers,

certain debts for acts that caused death or personal injury, and

certain long-term secured debts.

<div style="border:1px solid #999; background:#e8e8e8; padding:10px;">

### Warning: File Your Forms on Time

Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information about your creditors, assets, liabilities, income, expenses and general financial condition. The court may dismiss your bankruptcy case if you do not file this information within the deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

For more information about the documents and their deadlines, go to:
http://www.uscourts.gov/bkforms/bankruptcy_forms.html#procedure.

</div>

**Bankruptcy crimes have serious consequences**

If you knowingly and fraudulently conceal assets or make a false oath or statement under penalty of perjury—either orally or in writing—in connection with a bankruptcy case, you may be fined, imprisoned, or both.

All information you supply in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the U.S. Trustee, the Office of the U.S. Attorney, and other offices and employees of the U.S. Department of Justice.

**Make sure the court has your mailing address**

The bankruptcy court sends notices to the mailing address you list on *Voluntary Petition for Individuals Filing for Bankruptcy* (Official Form 101). To ensure that you receive information about your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address.

A married couple may file a bankruptcy case together—called a *joint case*. If you file a joint case and each spouse lists the same mailing address on the bankruptcy petition, the bankruptcy court generally will mail you and your spouse one copy of each notice, unless you file a statement with the court asking that each spouse receive separate copies.

**Understand which services you could receive from credit counseling agencies**

The law generally requires that you receive a credit counseling briefing from an approved credit counseling agency. 11 U.S.C. § 109(h). If you are filing a joint case, both spouses must receive the briefing. With limited exceptions, you must receive it within the 180 days *before* you file your bankruptcy petition. This briefing is usually conducted by telephone or on the Internet.

In addition, after filing a bankruptcy case, you generally must complete a financial management instructional course before you can receive a discharge. If you are filing a joint case, both spouses must complete the course.

You can obtain the list of agencies approved to provide both the briefing and the instructional course from: http://justice.gov/ust/eo/hapcpa/ccde/cc_approved.html.

In Alabama and North Carolina, go to: http://www.uscourts.gov/FederalCourts/Bankruptcy/BankruptcyResources/ApprovedCreditAndDebtCounselors.aspx.

If you do not have access to a computer, the clerk of the bankruptcy court may be able to help you obtain the list.

Software Copyright (c) 1996-2017 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

B2030 (Form 2030) (12/15)

# United States Bankruptcy Court
## Western District of Pennsylvania

In re  *Leroy John Balzer*
    *Karen Ann Balzer*                                             Case No.   **17-10652 TPA**

                                                   Debtor(s)        Chapter     **13**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.   Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

    ■ **FLAT FEE**

        For legal services, I have agreed to accept ............................................... $       **4,000.00**

        Prior to the filing of this statement I have received ............................... $       **1,000.00**

        Balance Due ................................................................................ $       **3,000.00**

    ☐ **RETAINER**

        For legal services, I have agreed to accept and received a retainer of ......... $       _____

        The undersigned shall bill against the retainer at an hourly rate of ............ $       _____
        [Or attach firm hourly rate schedule.] Debtor(s) have agreed to pay all Court approved
        fees and expenses exceeding the amount of the retainer.

2.   The source of the compensation paid to me was:

       ■ Debtor      ☐ Other (specify):

3.   The source of compensation to be paid to me is:

       ■ Debtor      ☐ Other (specify):

4.   ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

     ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm.  A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5.   In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

    a.  Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
    b.  Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
    c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
    d.  [Other provisions as needed]

6.   By agreement with the debtor(s), the above-disclosed fee does not include the following service:
        *As of the date of the filing of the Petition, Counsel for the Debtor has received a total of $1,500.00, which represents $1,000.00 in attorney's fees and a $500.00 expense charge. This expense charge includes the filing fee, a brringdown search fee, and photocopying and postage costs. The Debtor has agreed to a flat fee of $4,000.00 for attorney's fees, (subject to any increases approved by the Court in the "no-look fee") for the preparation and filing of the Bankruptcy Petition, Schedules, and related documents, Chapter 13 Plan, Motion for Wage Attachment, as well as the attendance of counsel at the First Meeting of Creditors and Confirmation Hearing.  Additional services, such as the filing of Motions to Avoid Liens, Objections to Claim, Motions and/or Complaints for Sale of Personal and/or Real Property, Adversary Proceedings, including but not limited to fraudulent conveyance actions, preference actions, turnover actions, and the defense of Objections to Discharge, the filing of Amended Chapter 13 Plans, and/or the conversion of the case to a Chapter 7 proceeding will be done on an hourly basis of $275.00 per hour additional charge to the Debtor.  Any and all additional fees and costs shall be approved by the Court and paid through the Debtor's Chapter 13 Plan.*

In re    **Leroy John Balzer**
**Karen Ann Balzer**
_____
Debtor(s)

Case No.    **17-10652 TPA**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)
### (Continuation Sheet)

### CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

**July 14, 2017**
_____
_Date_

/s/ Michael S. JanJanin, Esquire
_____
**Michael S. JanJanin, Esquire 38880**
_Signature of Attorney_
**Quinn, Buseck, Leemhuis, Toohey, & Kroto, Inc.**
**2222 West Grandview Boulevard**
**Erie, PA 16506**
**(814)833-2222   Fax: (814)833-6753**
_____
_Name of law firm_

# United States Bankruptcy Court
## Western District of Pennsylvania

In re    **Leroy John Balzer**
         **Karen Ann Balzer**                                    Case No.    **17-10652 TPA**
                                          Debtor(s)              Chapter     **13**

# VERIFICATION OF CREDITOR MATRIX

The above-named Debtors hereby verify that the attached list of creditors is true and correct to the best of their knowledge.

Date:   **July 14, 2017**                    **/s/ Leroy John Balzer**
                                             **Leroy John Balzer**
                                             Signature of Debtor

Date:   **July 14, 2017**                    **/s/ Karen Ann Balzer**
                                             **Karen Ann Balzer**
                                             Signature of Debtor

AAS Debt Recovery Inc.
P.O. Box 129
Monroeville, PA 15146

Alliance One
4850 Street Road
Suite 300
Trevose, PA 19053

AT&T
500 Summit Lake Drive
Suite 400
Valhalla, NY 10595

Bank of America
13150 Worldgate Drive
Herdon, VA 20170

Bank of America
450 East Boundry Street
Chapin, SC 29036

Bank of America, N.A.
P.O. Box 982238
El Paso, TX 79998-2235

CACH LLC
4340 S. Monaco Street
2nd Floor
Denver, CO 80237

Capital One Bank (USA), N.A.
P.O. Box 71083
Charlotte, NC 28272-1083

Cavalry SPV I LLC
500 Summit Lake Drive
Suite 400
Valhalla, NY 10595

CitiBank N.A.
500 Summit Lake Drive
Suite 400
Valhalla, NY 10595

Commercial Acceptance
2 Main Street
Shiremanstown, PA 17011

Core Logic
One Core Logic Drive
Westlake, TX 76262

Countrywide Home Loans, Inc.
4500 Park Granada
Calabasas, CA 91302

Countrywide Home Loans, Inc.
1800 Tapo Canyon Road
Simi Valley, CA 93063

David J. Apothaker, Esquire
520 Fellowship Road C306
Mount Laurel, NJ 08054

DiTech Financial LLC
1100 Landmark Towers
345 St. Peters Street
St. Paul, MN 55102

DiTech Financial LLC
P.O. Box 6172
Rapid City, SD 57709

Ditech Financial LLC/Greentree Servicing
3000 Bayport Drive
Suite 880
Tampa, FL 33607

Greentree Servicing LLC
7360 South Kyrne Road
Tempe, AZ 85283

Huntington Bank
2361 Morse Road
Columbus, OH 43229

Huntington Bank
831 State Street
Erie, PA 16505

Huntington Mortgage Group
P.O. Box 1588
Dept. EAW25
Columbus, OH 43216

Internal Revenue Service
ATTN: Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

Jennie C. Tsai, Esquire
Phelan, Hallinan Diamond & Jones LLP
1617 JFK Blvd., Suite 1400
One Penn Center Plaza
Philadelphia, PA 19103

Lynn M. Taber, Esquire
1150 1st Avenue, #501
King of Prussia, PA 19406

Pa. Dept. of Revenue
Dept. 280946
Harrisburg, PA 17128-0946

PNC Bank
2730 Liberty Avenue
Pittsburgh, PA 15222

PNC Bank
P.O. Box 3180
Pittsburgh, PA 15230

Portfolio Recovery Associates Inc.
P.O. Box 12914
Norfolk, VA 23541

Sky Bank
831 State Street
Erie, PA 16505

The Huntington National Bank
c/of McCabe Weisberg & Conway P.C.
123 South Broad Street
Suite 1400
Philadelphia, PA 19109

Trident Asset Management
53 Perimiter Center East
Suite 440
Atlanta, GA 30346